W. S. HUTTON, Appellee, v. J. W. DOXSEE, Administrator OF THE ESTATE OF M. H. HUTTON, Deceased, Appellant.

**Statute of Frauds:** *Instructions.* An instruction that if the son was in possession when the verbal contract sued on was made, and if he continued thereafter in possession, then his continuing in possession will not be sufficient to establish that he took possession under the contract, and, to entitle him to recover, the evidence must show that after the alleged verbal contract he changed his conduct or performed some act which indicates that he took and held possession under the contract, was as favorable to defendant as he was entitled to.

*Part performance.* Where a party is in possession of land under a lease, his continuance in that possession will not be sufficient to support a claim of part performance under a subsequent contract of purchase.

*Jury question.* Where the evidence was conflicting as to whether the son went into possession of the land under the contract, or was in possession under a lease at the time of the making of the contract, the jury must determine how the son went into possession of the land.

**Evidence:** PERSONAL TRANSACTION WITH ONE DECEASED: *Plea and proof.* In an action on a contract of a father to compensate a son for labor performed by the son, against the administrator of the father, the testimony of the son that he took possession of his father's farm and worked it for a number of years using substantially all the proceeds for improvements and payment of interest on a mortgage, was inadmissible on a count for labor, being the testimony of a party to an action against an administrator in regard to a personal transaction with the deceased, under Code, section 4604, but was admissible under the count for breach of contract, the taking possession of a farm and making improvements thereon not being a personal transaction with the deceased.

*Harmless error in admission of.* The admission of such testimony, if improper, was not prejudicial, where it was conceded that the son had taken possession of the farm, and had worked it for a number of years, and had paid a part of the interest on the mortgage.

ADMISSIBILITY: *Parts of same conversation.* In an action on a contract of a father to convey a farm to a son, where a witness had testified that the father had said he bargained the farm to the son, and that he had placed a mortgage on the land, it was proper to permit such witness to testify as to what the father had said the son should pay to certain persons, the latter being a part of the one conversation had with the father and admissible under Code, section 4615, providing that when a detached conversation is given in evidence, any other conversation necessary to explain it is admissible.

*Not tested by motion to strike.* A party cannot raise the question of the admissibility of evidence by a motion to strike out the testimony, but must object to its introduction.

LETTER OF ONE NOT HOLDING POSSESSION: *Res gestae.* In an action on a contract of a father to convey a farm to a son a letter written by a father to a third person while the son was in possession of the land was inadmissible, such letter not being a part of the *res gestae.*

EXCLUSION: *Error cured.* An erroneous ruling of a court in sustaining objections to questions asked a witness is harmless

where the witness is thereafter permitted to give the testimony sought to be brought out by such questions.

MEASURE OF PROOF: *Contracts between father and son.* In an action at law on a contract of a father to convey a farm to a son, plaintiff's case need only be established by a fair preponderance of the evidence.

SAME: *Instructions.* The court committed no error in refusing defendant's requests for instructions that, when plaintiff sought to take a contract out of the statute of frauds on the ground of part performance, it is indispensable that "the parol contract should be established by clear, unequivocal, and definite testimony, and the acts claimed to be done thereunder should be equally clear and definite, and referable exclusively to the agreement" and instructing instead that, before plaintiff would be entitled to recover, he must "satisfy" the jury that there was a part performance by plaintiff under the contract.

**Province of Jury:**      *Assuming disputed matters in instructions.* Where there was a conflict in the evidence as to the amount the son should pay to certain persons, it was error for the court in its instructions to assume that the son was required to pay a certain sum, as it invaded the province of the jury.

**Review on Appeal:**   ADMISSION OF TESTIMONY: *Argument not resorted to.* The court on appeal will not review the rulings of the trial court on the admissibility of evidence where the record is so indefinite that the objection can be learned only by reference to the argument.

*Appeal from Jones District Court.*—Hon. H. M. Remley, Judge.

TUESDAY, FEBRUARY 11, 1902.

PLAINTIFF filed a claim against the estate of M. H. Hutton, deceased, for work and labor performed at the instance and request of said Hutton, and, in a second count, for damages growing out of the deceased's failure to comply with a contract, whereby he (the deceased) agreed upon a sufficient consideration to deed plaintiff a farm in Jones county, Iowa. The administrator denied the claim, and pleaded a counterclaim for the use and occupation of the farm. The case on the issues thus joined was tried to a jury, resulting

in a verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*W. S. Chamberlain* and *Park Chamberlain* for appellant.

*M. W. Herrick* and *Ellison & Ercanbrack* for appellee.

DEEMER, J.—Plaintiff claims that the deceased, who was his father, on or about September 18, 1885, agreed to give him a farm in Jones county, which the deceased then owned, as his portion of the father's estate, if he (plaintiff) would remain upon and cultivate it, pay taxes and interest on a $3,000 mortgage, which deceased then contemplated placing on the land, and after the death of the father pay certain heirs the sum of $900; that he entered into the possession of the farm under this agreement, and has ever since been in the possession thereof as owner; that he has paid the taxes on the land, improved it, paid interest on the mortgage which was thereafter executed, and devoted his entire time to the management and control of the premises, using all of the income, except a small amount of clothing and board, in the payment of taxes, interest, and improvements as aforesaid; that, notwithstanding he performed all of his part of the agreement, his father failed and neglected to deed him the farm, or to will the same to him, that he might have title thereto as agreed. In the first count of the claim plaintiff sought to recover compensation for labor performed for his father, at his instance and request, from the year 1884 down to the time of his death, April 8, 1899. This count of the petition or claim was not submitted to the jury, the trial court holding, in effect, that there was not sufficient evidence to support it. We have stated it to the end that what follows may be better understood. The administrator denied both the express and the implied contract pleaded by plaintiff, and further pleaded the counterclaim mentioned in the initial state-

ment of the case, in which he asserted that plaintiff took possession of the farm under an agreement with his father, whereby he (plaintiff) was to pay interest on the mortgage and taxes for the use of the farm, which he neglected to do, and that there was due from him on this agreement the sum of $600 at the time of the father's death. The case comes to us on assignments of error presenting the correctness of certain rulings on the admission and rejection of evidence, of the instructions given and refused, and of the ruling on the motion for a new trial.

Addressing ourselves to these rulings, we find that according to the undisputed evidence M. H. Hutton, the father, lived on the Jones county land until about the time of the death of his first wife, in the year 1885, when he moved to the state of Nebraska, leaving plaintiff, his son, and daughter, Laura Gee, and her husband, L. L. Gee, upon the land. The father married a second time after his removal to Nebraska, and resided in that state until his death. He died intestate, leaving his second wife, a widow, and plaintiff, Martha Clark, and Philander Hutton, sons and daughters, and Bessie Gee and two children of Caroline Hutton Lapham, grand-children, as his only heirs at law. From 1885 to 1888 plaintiff and L. L. Gee lived upon and cultivated the Iowa farm, and had the proceeds thereof, less the taxes, which they paid. In the latter year Gee and wife left the farm, but plaintiff continued to use and occupy the same until the father's death. After moving to Nebraska, the elder Hutton made a mortgage of $3,000 on the Iowa farm, which bore 8 per cent interest. Plaintiff has paid some of the interest on that loan, but not all, as we understand it. He also made improvements on the premises. There is no doubt about plaintiff having been in the possession of the farm during the years mentioned, and the real question in the case is as to the nature of that possession. On the one hand it is insisted that plaintiff was to *have* the farm on conditions claimed, and on the other it is contended

that he was simply to have the *use* of it. In response to pertinent questions plaintiff was permitted to testify, over defendant's objections, "that he had been in possession of the premises from the time his father left the state in 1885, excepting the two first years that Mr. Gee was with him on the place; that there was a mortgage put on the place, executed to one M. M. Benedict, in 1888, and that he paid interest on said mortgage; that he paid all the interest that has been paid on the Benedict mortgage; that every dollar I have had from the proceeds of the place, I have had, excepting my own keeping, has went to pay interest, and has been spent on the place; that he had paid interest on the Benedict mortgage at a bank to one J. B. Smith, in whose care the mortgage was left; that he had to keep up the fences, and pretty near everything a fellow had to do on a farm; that he only expended about $15 or $20 per year for clothes, and that his board and a little tobacco was all he ever got from the place." The objections were to the competency of the witness under section 4604 of the Code. Doubtless, this evidence was inadmissible under the first count of the petition, which sought to recover compensation for labor performed. But, in view of the conceded facts, we think it was admissible under the second count, or, if not, that no prejudice resulted. The payment of the interest on the $2,000 mortgage, which was made to Benedict, was not a personal transaction with the deceased. True, the original mortgagee, M. M. Benedict was dead, and the mortgage is now owned by F. M. Benedict, but the action is not against Benedict, his heirs, representatives, or assigns; hence the statute does not apply to transactions with M. M. Benedict. *Clark v. Ross,* 96 Iowa, 402. Taking possession of the farm and making improvements thereon was not a personal transaction with the deceased. *Dysart v. Furrow,* 90 Iowa, 59; *Denning v. Butcher,* 91 Iowa, 425; *McElhenney v. Hendricks,* 82 Iowa, 657; *Walkley v. Clarke* 107 Iowa, 454. Under the rule announced in *Ballinger v. Connable,* 100 Iowa, 121, the testimony was perhaps inad-

missible under the first count, but not under the second. The matters referred to with reference to the possession and occupancy of the farm related to facts ascertainable from observation alone, and were in no sense transactions with Hutton, the deceased.

One Sinclair was a witness for plaintiff, and testified to various conversations had with deceased prior to his death, regarding the Iowa farm. The abstract contains this record: "I asked him if he was going to sell the farm. 'No, sir,' he said: 'I have bargained the farm to Wesley, and I have to borrow $3,000.00 from Mr. Benedict, and I have to put it in lands in Nebraska, which I consider my share. I want Wesley to pay that mortgage, and pay $500.00 to Mate (who was his sister), and $200.00 to each of the girls of Laphams, and Laura, Mr. Gee's wife, has had her share.' (The administrator moves to strike out the latter part of the answer as immaterial. The motion overruled, and the administrator excepts.)" We do not have the question propounded nor the answer given to that question, and have no other means of knowing what is referred to than appears in the foregoing quotation. Manifestly, it is so indefinite that we cannot tell what is referred to, except by resort to the argument. This is not sufficient. It must appear from the abstract that the ruling of the court was incorrect. Presumptively the ruling was correct, and, as a great deal of the latter part of the answer was material, no error appears. At any rate, it was a part of the one conversation had by witness with the deceased, and it was all admissible as explaining what preceded. Code, section 4615, last sentence. The record discloses the following with reference to the examination of another of plaintiff's witnesses: "Q. Do you remember of his saying anything about Mrs. Gee in that conversation? (Objected to by administrator as being immaterial. Objection overruled, and administrator excepts). A. Why, he said, when he signed that note with her,—when he told her he would sign it, remember,—that he would sign it, but that

he hadn't any money to pay it. That he would sign it, and, if he had to pay it, it was her share. Q. That was a note executed by her father for the place she had bought? A. Yes, sir. (The administrator moves to strike out that portion of the answer relating to Laura Gee and the signing of the note as being incompetent and immaterial. Objection overruled, and administrator excepts.)" The following also appears with reference to another witness: "Q. Was there anything further said about it? A. He claimed that his daughter, Mrs. Gee, had had her share. (Objected to by administrator as being immaterial, and the administrator moves the court to strike out the answer as immaterial.) By the Court: Was what you say he said last—was that said at the same time that he said the other? A. Yes, sir. Q. And a part of the same conversation you have been telling? A. Yes, sir. (The above objection of the administrator was then overruled, and the administrator excepts.)" It will be noticed that, save in one instance, there was no ruling on the objections to the questions, but the matter was raised by motion to strike. The rule is well settled that a party cannot stand by and take the chances on a witness' answer being favorable, and then move to strike if it proves to be contrary to his liking. In the one instance where objection was made and overruled and exception taken, the question called for what deceased said about Mrs. Gee in a conversation with reference to the disposition of the Iowa farm and its proceeds. It was a part of the one conversation, and gave color to the whole, and was therefore properly admitted. Greenleaf, Evidence, section 201; 1 Phillips, Evidence, (4th Ed.) 416; *Dougherty v. Posegate,* 3 Iowa, 88. That such declarations are admissible in evidence, see *Jamison v. Jamison* 113 Iowa, 720.

Mrs. Brady was a witness for the defendant, and, after testifying that plaintiff told her he (plaintiff) had to pay taxes for the use of the farm, the record discloses the following: "Q. He spoke about that being the agreement

with his father? (Objected to by plaintiff as being incompetent. Objection sustained, and administrator excepts.). Q. Did he, in those conversations, state with whom he had made this agreement? (Objected to by plaintiff as assuming that he had made an agreement, and as leading, and incompetent. Objection sustained, and administrator excepts.)"

These rulings, if they stood alone, could hardly be sustained, but it appears that thereafter the following question was propounded, to wit: "Q. In these conversations with you in regard to how he had to pay for the use of the farm, to whom did he allude as the owner of the farm? A. Why, his father, of course, as far as— (Objected to by plaintiff as being incompetent, irrelevant, and immaterial, and assuming that anything of that kind was done, and as being leading. Objection sustained, and the administrator excepts.) Q. In those conversations did Wesley tell you who he had contracted with for the use of the farm? A. Nothing particular, only the reference to the—" Cross-examination: "I live now at Scotch Grove, about a mile and a half from Wesley Hutton's. I had a conversation with him about three weeks ago. He said he had gone out West to get his deed. That his father had signed the deed, and the stepmother wouldn't sign, as near as I can remember. That was the conversation as near as I can state it." This, it seems to us, cured the error. In any event, the witness gave the whole conversation, and the first question propounded to her, which we have set out, would, under these circumstances, and especially in view of her last answer, be a conclusion. The question might call for a fact or a conclusion of the witness, but her last answer seems to indicate that it would in this instance call for a conclusion. The error, however, if error it was, was without prejudice. Moreover, the ruling on the second question is not properly assigned as error.

F. M. Benedict, the holder of the mortgage, was a witness for defendant, and after testifying to certain conversations with plaintiff, in which he (plaintiff) said he was talk-

ing of buying the farm, produced a letter purporting to be signed by M. H. Hutton, deceased, written in December of the year 1896, and appearing to be in answer to one from the witness, reciting that he (M. H. Hutton) had rented the farm to his son; that his son was to pay interest and taxes on the farm; and that he would write the son and have him attend to the matter of interest. This letter was offered in evidence by the defendant, but rejected on objection of the plaintiff. The ruling is challenged. Citation of authorities is scarcely necessary to demonstrate its correctness. But see 1 Greenleaf, Evidence, section 190; *Benson v. Lundy,* 52 Iowa, 265; *Jamison v. Jamison, supra.* The author of the letter was not then in possession of the land, and the letter was no part of the *res gestae. In re Perkins' Estate,* 109 Iowa, 216, relied on by appellant, is not in point. This disposes of all questions made of rulings on evidence.

II.   Defendant asked an instruction to the effect that plaintiff must prove his case by clear, unequivocal, and definite testimony.   This was refused, and in lieu thereof the court instructed that a preponderance of the evidence was sufficient.   There was no error in this *Jamison v. Jamison, supra.* We are asked to say that that case is erroneous, and to overrule it. As it follows two other cases theretofore decided by this court, and simply reaffirms a rule of long standing,—one which seems to have support in the great majority of cases,—we do not feel like disturbing it. The distinction between the measure of proof in law and in equity cases in this respect has always been preserved by this court. All the cases relied on by appellant, save one, were suits in equity. In the exceptional case no question was made of the instruction. See *Albright v. Hannah,* 103 Iowa, 98. *Cooley v. Lobdell,* (153 N. Y. 596), (47 N. E. Rep. 783); cited by appellant, is not in point. If the instruction had simply related to the effect of admissions said to have been made by the elder Hutton, there would be some force in the defendant's position, but this is

not its purport. See, also, as sustaining our conclusions, and directly applicable to the facts of this case, *Sweeney v. O'Hora,* 43 Iowa, 34. Another instruction asked by defendant read as follows: "When it is sought to take a case out of the statute of frauds, and avoid its operation in nullifying the contract, upon the ground of part performance, it is indispensable that the parol contract or gift should be established by clear, unequivocal, and definite testimony, and the acts claimed to be done thereunder should be equally clear and definite, and referable exclusively to the said agreement of gift." This was also refused but the trial court charged as follows: "Before the plaintiff would be entitled to recover, he must satisfy you from the evidence, that the plaintiff did pay some part of the purchase price of said premises, or that he has, with the actual or implied consent of the said M. H. Hutton, taken possession of said premises under and by virtue of said contract." There was no error in refusing the instruction asked. The word "satisfy" is as strong as the words used in the instruction asked. *Rosenbaum Bros. v. Levitt,* 109 Iowa, 292, and cases cited. The court also instructed as follows: "If you find the plaintiff was in possession of said real estate at and before the time said verbal contract sued upon by plaintiff was made, if you so find, and that plaintiff did continue in possession of said premises after the time said alleged contract between the plaintiff and the said M. H. Hutton is shown by the evidence to have been made, if you so find, then the fact that the plaintiff continued in possession of said premises will not be sufficient to establish that the defendant did take possession of said premises under and by virtue of said contract, and, in order to entitle the plaintiff to recover, you must find from the evidence that at the time or after said alleged contract was made the plaintiff did change his conduct or perform some act which indicates that he did take and hold possession under and by virtue of said contract." This, as we understand it, covers the exact point made by the defendant in the

instruction asked. Moreover, under the holding in the *Sweeney Case, supra,* the instructions given on the burden of proof and the question of part performance were as favorable as appellant was entitled to. In the ninth instruction the court said, among other things: "If you find that the plaintiff is entitled to recover herein, then, in arriving at your verdict, you will first determine the value of said farm described in plaintiff's petition at the time of the death of said M. H. Hutton; and from such value of said farm you will take the full amount of said mortgage note, with all unpaid interest up to the present time, at the rate per cent. thereof as is shown by the evidence. You will also take therefrom the sum of nine hundred dollars, which was to be paid to the heirs of M. H. Hutton, if you so find, and you will return your verdict in favor of the plaintiff for the balance thus found." This is objected to because it invades the province of the jury. The argument is that the jury could, under the evidence, as well have found that plaintiff was to pay the heirs the sum of $2,-000 as $900, and that the exact agreement should have been left to the jury. There was evidence tending to show that plaintiff was to pay the other heirs from $1,000 to $2,000. Indeed, in a letter written at his suggestion it was stated that he was to pay $2,000 in addition to the incumbrance against the land. True, there was other evidence to the effect that he was to pay but $900, and the petition or claim alleged that this was the agreement, but, in view of the conflict, we think the question of amount was for the jury. The statement in the petition was denied by the defendant, and the court should not have assumed that the amount he agreed to pay was $900 or nothing. This error seems so plain that no amount of argument will make it any clearer. But see *Case v. Burrows,* 52 Iowa, 146; *Saar v. Fuller,* 71 Iowa, 425. Appellee argues that the error was without prejudice, but we do not think so. If the jury had found that plaintiff had agreed to pay $2,000, instead of $900, the verdict would have been

for as much less as the difference between these two amounts.

III.   Claim is made that the court should have sustained appellant's motion for a new trial because of insufficiency of the evidence to support the contract claimed.  In view of a retrial, we do not feel justified in expressing an opinion on this point.

IV.   But one other question is argued, and that, the sufficiency of the evidence under the instructions to take the case out of the statute of frauds.   There was some evidence to the effect that plaintiff's original contract was of purchase, and not of lease, and that Gee's occupancy of the land with him was by sufferance. If the jury found this to be true, then the sole question in the case was whether plaintiff's possession was under a lease, or in virtue of a purchase of the land, and in either event his possession was sufficient to take the case out of the statute. But there was also evidence to the effect that plaintiff and Gee held the possession of the land for nearly two years under a contract of lease, and that plaintiff then made the claimed agreement of purchase.   If the jury found this the true state of affairs, then the statute of frauds is applicable, and plaintiff, in order to recover, must show that his possesion, and the making of improvements were exclusively referable to this contract of purchase.   The rule seems to be well settled that, if one is already in possession of land under a contract of lease, his continuance in that possession will not be sufficient to support a claim of part performance under a subsequent contract of purchase.   *Recknagle v. Schmaltz,* 72 Iowa, 63; *McPherson v. Berry,* 92 Iowa, 71.   It was for the jury, under this evidence, to determine how plaintiff went into the possession of the premises and made the improvements thereon.   If under a contract of lease, then we think he has failed in his action.   If under a contract of purchase, then his possession, if referable exclusively to that contract, would take the case out of the statute.

The ultimate question here is, under which contract did plaintiff take possession? On this point, in view of the retrial, we should not express an opinion. The instructions fully covered the matter, and, as we have heretofore said, were unobjectionable; but for the error pointed out the judgment must be REVERSED.