# CHARLESTON

## CAMPBELL *v.* BEARD.

Submitted March 9, 1905.   Decided March 28, 1905.

1. PRINCIPAL AND AGENT.

    An agent having authority to sell one tract of land at a stipulated price, or that tract and another combined for a certain other stipulated price, may,. within the time limit of his written authority, and with the assent of his principal, verbally expressed, make separate sales of the two tracts to one person at prices which amount, in the aggregate, to the sum for which he was authorized to sell the two tracts combined.   (p. 507.)

2. PRINCIPAL AND AGENT—*Agents Authority.*

    In such case, by consent of the principal, expressed as aforesaid, at the time of the effectuation of the sale of the one tract, which the agent is authorized to sell separately, and in the course of the negotiation therefor, election to take the other tract, which the agent was not originally authorized to sell separately, at a price, which, added to the price stipulated for the single tract, will equal the price fixed for both, may be exercised by the purchaser of such first mentioned tract, at a subsequent date within the period of the agent's authority to sell.   (p. 508.)

3. PRINCIPAL AND AGENT—*Contract Construed.*

    If, in such case, the written contract between the principal and agent, gives to the latter an option to purchase the property at the prices named therein, he may, at the time of selling the one tract, which he is authorized to sell separately, at the price stipulated therefor, as a part of the same transaction, bind his principal to sell to him the other tract for the residue of the price fixed for the two tracts combined, by accepting the proposition of sale as to it. (p. 509.)

4. SALE OF REALTY—*Contract by Mail.*

    When parties have adopted the United States Mail as a means of communication in their negotiations, the mailing of a letter, accepting an offer of sale, makes a complete and binding contract of sale, dating from the moment of the deposit of the letter in the postoffice. (p. 509.)

5. CONTRACTS BY MAIL—*Evidence of Letter.*

    Evidence establishing the receipt of such letter, accompanied by proof of the day on which it was written, dispenses with the necessity of proof in detail of the addressing, stamping and deposit thereof, when there is no objection to the form in which the evidence is introduced.   (p. 509.)

6. PRIMARY EVIDENCE— *When Waived—Letter.*

    Non-production of a letter, relevant and important as evidence, is waived, by failure to object to proof of its contents.   (p. 508.)

7. CONTRACTS BY MAIL—*Evidence of Mailing Letter.*

Proof, by a witness, that he wrote a letter on a certain day, accompanied by proof of its receipt by the party to whom it was written, at the time it would have arrived at its destination in due course of mail, is sufficient to support a finding that it was mailed on the day on which it was written. (p. 509.)

8. SALE OF REALTY—*Specific Performance—Wife's Signature—Pleadings.*

Specific performance of a contract of sale of real estate will not be refused, merely because it does not affirmtively appear that the vendor's wife is willing to join in the conveyance, her unwillingness to do so not having been pleaded as a defense. (p. 511.)

Appeal from Circuit Court, Pocahontas County.

Bill by E. W. Campbell against C. E. Beard and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

MOLLOHAN, McCLINTIC & MATHEWS and L. M. McCLINTIC, for appellants.

R. S. TURK, for appellee.

POFFENBARGER, JUDGE:

The principal question presented by this record is, whether a contract of sale of a tract of four hundred and seventy acres of land was effected. Peculiarity in the relation of the parties makes it necessary to present the facts in detail. C. E. Beard and his wife owned a tract of two thousand eight hundred and thirty-seven acres of timber lands in Pocahontas county. Beard and D. A. Penick owned another tract of four hundred and seventy acres which had some timber on it. The owners of both these tracts desired to sell the same, the former for $50,000 and the latter at ten dollars per acre. Jacob Yost, of Staunton, Virginia, had, as agent, been dealing in similar lands in that county and was in touch with persons in Pennsylvania, and perhaps elsewhere, to whom he thought he could sell these lands. Accordingly, Beard, on the 22nd day of August, 1902, entered into two written contracts with Yost, the first of which authorized him to sell the large tract at the price of $50,000, of which one-third was to be paid in cash and the balance in equal installments at one, two and three years, with interest, to be secured by a vendor's lien. It further authorized him to sell the four hundred and seventy acre tract, described

therein as the Beard and Penick land at ten dollars per acre, payable on the same terms. An important clause in the first contract, made a part of the second by reference, reads as follows: "Upon notice from the party of the second part that prospective purchasers or their representatives will visit and examine the land at a certain definite time, the party of the first part hereby agrees to grant to the party of the second part, or to his assigns, an exclusive option to purchase on the conditions named above, said option to extend over such time as may be necessary to examine land and titles and make report thereon, but not to exceed twenty (20) days."

Yost at once entered into negotiations for the sale of these lands with the firm of Geo. W. Campbell & Son, of Warren, Pennsylvania. They sent one Morrison to Pocahontas county, to examine the land, who, after looking over the two tracts, informed Yost that his report as to the large one would be favorable, and, as to the smaller one, unfavorable. Perceiving the danger of a loss of the sale, Yost applied to Beard for a modification of the contracts, to which request Beard acceded and signed an instrument which reads as follows:

"In consideration of one dollar in hand paid, the receipt of which is hereby acknowledged, the above contract is modified so as to provide as follows: The price of the two thousand eight hundred and thirty-seven acres of the Beard land shall be $50,000, and the price of Beard land and the Beard and Penick land (about four hundred and seventy acres) combined, shall be $51,800. Terms: One-third down, balance in one, two, and three years, equal instalments, at six per cent. and secured by vendor's lien. The commission shall be five per cent. of the gross amount of the sale, payable as and when payments on the land are realized. The time of this option expires Oct. 1st, 1902. Sept. 15th, 1902. (Signed) C. E. Beard."

The manifest purpose of this modification was to induce a sale of the large tract. By it, Beard bound himself to sell, with that tract, all his interest in the small tract, for the price of the large tract alone. He owned but one-fourth of the small tract while Penick owned the residue, and Penick had authorized him to sell his interest at the rate of five

dollars an acre, which amounted to nearly $1,800.00 the amount added to the price of the large tract. According to Yost's testimony, this is the basis on which the modification was made, but Beard says he reduced the price of the large tract by $1,000,00 and made the price of the small one $2,800.00 in determining the price of the two tracts combined. However this may be, the principal reduction was made on the smaller tract. According to Beard's statement, its price was cut nearly one-half, while that of the large tract was reduced by one-fiftieth. So the issue between them as to this is not very important. Being unable to reach an agreeement within the time limited, Yost, at the instance of G. W. Campbell, procured an extension of Yost's authority to sell until the 10th day of October. This was granted on the 24th day of September. At that time, E. W. Campbell, son of G. W. Campbell, and the active member of the firm of G. W. Campbell & Son, was in California. On the 2nd day of October, G. W. Campbell, head of the firm, died, and Yost was notified of the fact. On the 12th day of October, E. W. Campbell telegraphed Yost as follows: "Get fifteen days extension on Beard option, and will go down next week to close deal." On the same day Yost telegraphed Beard as follows: "Ed Campbell wires for fifteen days extension, and adds, 'Will go down next week to close deal.' Shall I wire him to come?" On the next day Beard replied to Yost as follows: "O. K. wire Campbell to come." On the 22nd day of October, 1902, Beard, Yost and John W. Campbell met at Marlinton, West Virginia, for the purpose of effecting the sale. Owing to business engagements which precluded his attendance, E. W. Campbell had sent John W. Campbell, his brother, to represent him, giving him a letter of introduction, directed to Mr. Yost, which read as follows: "This will introduce to you my brother, Jno. W. Campbell, who will probably make arrangements with you for the purchase of the Beard and Loffland lands on Williams River." Neither E. W. Campbell nor John W. Campbell was very familiar with the land or the negotiations relating thereto. The former had just returned from California, and the death of his father had necessarily diverted his mind from business matters, as well as suddenly cast upon him new and additional burdens.

John W. Campbell had suddenly been called upon to act in a matter concerning which he knew but little. Negotiations for the sale of a tract containing more than two thousand acres, known as the Loffland lands, had been carried on between Yost, as agent, and Campbell and Son, while the negotiations for the Beard and Penick land were pending. The letter of introduction mentioned only the Beard land and the Loffland land, but the Beard option contained the small tract, called the Beard and Penick land. John W. Campbell thought he was not authorized to take anything but the Beard land and the Loffland land mentioned in the letter. Accordingly, he agreed, on behalf of his brother, to take the large tract at the price of $50,000, and declined to take both at the price of $51,800. Yost says he, at the time, informed Beard and John W. Campbell that E. W. Campbell wanted both tracts and, further, that if Campbell did not take the small tract, he himself would take it, and that Beard agreed that if Campbell did not take it, he, Yost, might have it for the additional sum of $1,800. Beard denies this, saying he not only did not make such an agreement, but that he informed Yost, on that day, after the large tract had been taken, that neither Campbell nor any one else could have it at that price. He further says Yost made no such request, but did ask permission to sell it to some person at Staunton, Virginia, who was not named. On that day, or shortly afterwards, a deed was prepared, conveying the large tract to E. W. Campbell, John W. Campbell and Frank Morrison, which, together with a draft for one-third of the purchase money, was sent through the bank to E. W. Campbell. The deed was afterwards altered, or a new one made, so as to convey the land to E. W. Campbell, and, after some delay, the transaction was closed as to the large tract.

In the meantime, Yost, on his return home, wrote to E. W. Campbell, informing him of the error of his brother in respect to the four hundred and seventy acre tract, and, on the 25th day of October, 1902, E. W. Campbell wrote to Yost, telling him that he would take the four hundred and seventy acres and desired to have it included in the deal. On the 28th day of the same month, Yost informed Beard, by letter, that Campbell would take it. That letter reads as follows: "Mr. Campbell advised me that he would take the

four hundred and seventy acres of the Beard and Penick land at $1,800.00, one-third down, balance in one, two and three years with interest, secured by vendor's lien. Please have the deed prepared to the same parties and in the same way that the Beard deed was prepared. How long have you had this land, and in what way was it acquired. It occurred to to me that it was such a small tract that it might not be necessary to go to the extent of an abstract. Let me hear from you, please." To this Beard replied on the 30th day of the same month as follows: "Yours of recent date received. Will say in reply, I do not care to sell the four hundred and seventy acre tract at the price indicated." On the next day, Yost wrote Beard a long letter, detailing what he says was their understanding respecting the four hundred and seventy acre tract on the 22nd of October, 1902, and the conversation between them at that time. Beard, on the 4th of November, wrote Yost a letter in which he complained of delays, the necessity of changing the contract and extending the time and concluded as follows: "Now Mr. Yost this is the first time in my life a man ever held me up while some one else went through my pockets, and as it is such you may expect me to resist." He made no denial of Yost's statements concerning their conversations. On the 20th of November, after having received payment for the large tract, Beard wrote Yost, enclosing a check and notes for his commission on the sale of the large tract and offered him the privilege of selling other lands for him. In answer thereto, Yost renewed his demand for the conveyance to Campbell, reminding Beard again of the understanding which they had effected on the 22nd of October. To this Beard replied on December 1, 1902, giving information about the Elk River lands which he wanted Yost to sell for him and concluding as follows: "We seem to differ so much about what is right and just that it is hardly worth while for us to talk about the four hundred and seventy acre Penick land, and I do not intend to take $1,800.00 or any such price for it."

Later Campbell brought this suit to compel a conveyance to him of said four hundred and seventy acre tract of land and the court decreed in his favor. As the contract between Beard and Yost, authorizing the sale of the land was not signed by the wife of Beard, the court, in its decree, allowed

Campbell to withhold $400.00 of the purchase money without interest to indemnify him against Mrs. Beard's contingent right of dower. From this decree Beard and Penick have appealed.

Upon the evidence, the circuit court has found in favor of Campbell as to what occurred on the 22nd day of October, 1902. Its finding ought not to be disturbed unless this Court can see that it is clearly wrong. Yost's testimony in favor of Campbell seems to be more in harmony with the conditions and circumstances prevailing at the time, and more consistent with the correspondence disclosed by the record, than that of Beard. The latter might well have assumed, in view of the great reduction he had made in the price of the small tract for the purpose of inducing a sale of the larger one, that it was very improbable that Mr. Campbell did not intend to take it, and also that John W. Campbell was misled by the language of the letter which his brother had sent with him. As he did not, in his subsequent correspondence with Mr. Yost, deny in detail the conversation and understanding, charged by Yost in his letters, the inference is that he either did not remember just what had been said or acquiesced in the statements made by Yost. At any rate, it is by no means clear that the circuit court erred in its finding upon this evidence.

The contention of counsel for the appellant is that, as Beard's offer was in the alternative, Campbell's acceptance of the large tract was an election between the two propositions presented, and that, having exercised it, he was not in position, at any subsequent time, to take the small tract for the reason that, by so doing, he would exercise his choice or election a second time. That this is an extremely technical position to take is very apparent. Whether, under ordinary circumstances, a plain unequivocal election in such case would be conclusive and final, we are not called upon to say. We do not regard this as a final and definite expression of choice on the part of Campbell. Beard, without violating any legal principles, might bind himself, by oral agreement, to yield his right to have an immediate, instantaneous and conclusive election and allow it to be made at any time within the period covered by the authority of his agent to sell. Suppose Mr. Campbell had been present and had said to Beard,

"I will close with you as to the large tract this morning, provided you will give me the privilege of taking the small tract along with it this afternoon," and Beard had assented to the arrangement. What principle of law would have stood in the way of such an arrangement? It would have been a sale of both tracts for the combined price fixed in the option, and, in every substantial sense, a single transaction, one sale, as contemplated and authorized by the contract. That a few days, instead of a few hours, intervened, does not alter the principle, provided the time limited in the written offer of sale had not expired. This is exactly what Yost says Beard agreed to do, and the issue of fact between the parties, relating to this matter, has been determined by the trial court in favor of Campbell. As has been indicated, we think the testimony of Yost is more consistent than that of Beard. Had Beard frankly notified him on October 22nd that he regarded the transaction as finally ended and completed, it is altogether improbable that Yost would have manifested so much confidence as is indicated by the letter he subsequently wrote after having heard from Campbell. It is quite likely, too, that Beard, on receipt of it, would have promptly reminded Yost of so important a fact.

By the terms of the last written contract between Beard and Yost, the authority of the latter to sell expired on the 1st day of October, 1902. Afterwards, his authority was extended ten days, and, still later, through an additional period of fifteen days, which made the final expiration of it occur on the 26th day of October, 1902. Mr. Campbell, in his testimony, says, in response to a question as to the time at which he was first informed of the omission of the four hundred and seventy acre tract from the sale: "Well, I don't remember exactly just when the matter was first brought to my attention, but I received a letter—the first I remember, calling my attention to it about the 25th of October, I think. At any rate I wrote to Mr. Yost on the 25th of October that I wanted that land included in the purchase, and that is about the time that I received the letter from him." The letter was not called for nor was the testimony objected to on account of the form in which it was given. Three days latter, Yost wrote to Beard, saying he had been advised by Mr. Campbell that he would take the four hundred and

seventy acre tract.    There is no evidence that Campbell communicated his desire in any way other than by the letter. As it is clear that Yost received it, there is no necessity for evidence in detail that it was properly addressed, stamped and deposited in the postoffice.    That letter was mailed before the authority of Yost as agent of Beard had expired. The mailing of that letter, under the authorities, constituted an acceptance of the proposition and converted it into a contract of sale, and this occurred one day before Yost's authority to sell had expired.    The posting of a letter of acceptance of a proposition of sale, when the offer is not qualified so as to require a receipt of the letter to constitute an acceptance, makes the acceptance complete from the moment the letter is mailed.    *Patrick* v. *Bowman*, 149 U. S. 411; *Mactier* v. *Frith*, 6 Wend. 103; *Clark* v. *Dales*, 20 Barb. 42; *Brisban* v. *Boyd*, 4 Paige 17; *Vassar* v. *Camp*, 14 Barb. 341; Story Con. section 384; *Adams* v. *Lindsell*, 1 B. & Ald. 681; *Dunlop* v. *Higgins*, 1 H. L. Cas. 381; *Ham's Case*, L. R. 7 Chy. 587; The Palo Alto, 2 Ware 343; *Wheat* v. *Cross*, 31 Md. 99.    The United States mail had been previously used by the parties as a means of communication in conducting their negotiations, and their situation was such as to make it highly probable that each had contemplated the use of the mail as such agency.    Either of these grounds was sufficient to warrant its use by Campbell in accepting the offer of sale.    9 Cyc. 295.    In order to effect an acceptance, it was not necessary to mail the letter to Beard, for Yost was duly authorized to make the contract as Beard's agent, and his power as such agent had not ceased, either by efflux of time or revocation.

There is another ground upon which the decree can be sustained.    The contract between Beard and Yost has a double aspect.    It creates an agency in Yost to sell.    It also gives him a right to buy, which, in the absence of a stipulation conferring it, an agent does not have.    It says: "Upon notice from the party of the second part that prospective purchasers or their representatives will visit and examine the land at a certain definite time, the party of the first part hereby agrees to *grant to the party of the second part*, or to his assigns, an *exclusive option to purchase* on the condition named above, said option to extend over such time as may be

necessary to examine the land and titles and make report there-on, but not to exceed twenty (20) days." Yost swears that the propsition of sale of both these tracts was accepted at the same time, the large one by Campbell and the smaller one by him, Yost, subject to the right of Campbell to take it if he wanted it. No reason is perceived why this could not be done, and, upon the evidence, we are of the opinion that the trial court did not err in reaching the conclusion that such was the understanding. This would amount to a substantial, and even technical, compliance with the terms of the con-tract. There was nothing in it which prohibited Yost from selling one tract to one man and the other to another, pro-vided both were taken at the same time at the price named in the contract. To what extent or in what manner, could Mr. Beard be injured by an arrangement of that kind? If he disposed of all his land and received his full price for it, of what consequence was it to him who got the land or paid the price? The only objection urged against Yost's claim as a purchaser is his agency. It is based upon that principle of law which precludes an agent from making a sale to himself, but, in taking this position, counsel overlook the provision in the contract which authorizes the agent to buy the subject of his agency at the price stipulated in the contract. Though an agent cannot purchase his principal's property at his own sale thereof, no rule of law prohibits the principal from making a sale of it, or making a contract to sell it, to his agent. *Rochester* v. *Levering*, 104 Ind. 562; *Fisher's Ap-peal*, 34 Pa. St. 29; 2 Pom. Eq. Jur. 959; *Young* v. *Hughes*, 32 N. J. Eq. 372; *Farnam* v. *Brooks*, 9 Pick. 212; *Burke* v. *Bours*, 98 Cal. 171.

Though the clause last above quoted is found in the original contract relating to the large tract and not in the original paper relating to the small one, we think it became a part of the latter by the reference therein to the former and the subsequent merger of both contracts into one, effected by the paper executed September 15, 1902. By this the two prop-erties were combined in a single proposition of sale and all the instruments read together show a clear intent on the part of Beard to extend, to the four hundred and seventy acre tract, the general provisions of the contract relating to the two thousand eight hundred and thirty-seven acre tract, so

far as, by their nature, they might be made applicable thereto.

The court, however, erred in authorizing a retention of part of the purchase money as indemnity against the contingent right of dower of the wife of the defendant Beard. The fact that this defendant has a wife is disclosed only by the evidence in the case. That she will refuse to join in the deed does not appear in any way. The refusal of the wife of the vendor to join in a deed conveying land which he has sold, is matter of defense which must be pleaded. Although the court may know, by some means, that the vendor has a wife, it cannot presume that she will not execute the conveyance. On the contrary, there is a presumption of harmony and unity of will between the husband and wife. For the position, that disability to execute the contract, because of the refusal of the wife to release her contingent right of dower, by joining in the deed, must be set up in the pleadings as matter of defense, authority is found in *Brown* v. *Eaton*, 21 Minn. 409. In numerous cases courts have refused to enforce performance of the contract upon establishment of the unwillingness of the wife to join in the conveyance, but in every such instance her unwillingness has been pleaded as a defense to the bill. *Corson* v. *Mulvany*, 49 Pa. St. 88; *Riez's Appeal*, 73 Pa. St. 485; *Burk's Appeal*, 75 Pa. St. 141; *Lucas* v. *Scott*, 41 O. St. 636; *Hawralty* v. *Warren*, 18 N. J. Eq. (3 C. E. Green) 124; *Reilly* v. *Smith*, 25 N. J. Eq. (10 C. E. Green) 158; *Dunsmore* v. *Lyle*, 87 Va. 391. The court was neither under a duty, nor clothed with a discretion, to make out by way of assumption, from a fact incidentally appearing in the record, and set up an objection to the relief sought by the plaintiff, not presented nor relied upon as a defense. Parties who are *sui juris* cannot expect the courts to put in answers and pleas which they themselves will not present. Again, how could the court know whether Mrs. Beard was willing to join in the deed? Beard might have been unable to prove her unwillingness to do so, if he had alleged it.

For this error, the decree must be reversed and the cause remanded to the circuit court, with directions to enter a decree, requiring the defendants, C. E. Beard and D. A. Penick, to convey, to the plaintiff E. W. Campbell, by deed with covenants of general warranty, said four hundred-seventy

acre tract of land, on the execution and delivery to the defendants of three bonds or notes for the sum of $400.00 each, payable to the defendants, in one, two and three years, respectively, from the date of such conveyance, with interest thereon at the rate of six per centum per annum, reserving a vendor's lien in said deed to secure the payment of such deferred instalments of purchase money, and requiring the payment to said defendants of the sum of $600.00, tendered by the plaintiff with his bill and paid into court, and to enter such further orders and decrees as may be necessary to enforce full and complete performance of the said contract of sale and payment to the plaintiff of his costs in 'the court below.

*Reversed.*