J. A. WITTE and WIRT ROE, Appellants, v. HAROLD GARDNER, Known as JACK GARDNER, A. A. KUGLER and G. G. GARDNER, Appellees.

**Real property:** SPECIFIC PERFORMANCE: ORAL CONTRACT: EVIDENCE.
1  In this action for specific performance of an oral contract for the purchase and sale of land, the evidence is reviewed and held insufficient to show by clear and satisfactory proof that the minds of the parties met in the alleged agreement.

Same: PART PAYMENT: STATUTE OF FRAUDS: EVIDENCE. To consti-
tute a check part payment on an oral contract for the purchase of
land, so as to take the contract out of the statute of frauds, it must
have been exclusively referable to the contract between the parties.
Where there was no definite agreement in the first instance, and
the giving of the check was conditional, there must have been a
subsequent agreement and ratification of the acceptance of the
check based thereon to take the transaction out of the statute. The
evidence in this case fails to show such subsequent agreement.

*Appeal from Mitchell District Court.*—HON. J. F. CLYDE,
Judge.

FRIDAY, NOVEMBER 14, 1913.

ACTION in equity for specific performance.—*Affirmed.*

*John McCook* and *Bush & Spaanum*, for appellants.

*Mears & Lovejoy* and *A. A. Kugler*, for appellees.

WITHROW, J.—The appellees were the owners of certain
real property in Mitchell county, Iowa. It is the claim of the
appellants that on or about the 13th day of July, 1912, the
appellees offered to sell said property to the appellants for a
consideration of $98 per acre, $500 of the consideration to be
then paid, the balance to be paid March 1, 1913, when con-
veyance should be made, subject to an existing mortgage for
$8,500 then against the property, which mortgage drew 5 per
cent., the grantees to assume the mortgage, with interest from
March 1, 1913. Appellants aver that they accepted said
proposition, and at the time paid to the appellees the sum of
$500 in cash, which was accepted by the appellees to bind the
purchase upon the terms and conditions above stated. They
aver a refusal on the part of appellees to carry out the con-
tract, and a readiness and willingness and continuous offer
on their part to perform the same. They also aver a repudi-
ation of the contract on the part of the appellees, and pray

a decree for specific performance. Other claims in the petition need not be stated, as they relate only to injunction and to possessory rights.

The appellees, defendants in the original proceeding, deny that a contract of sale was entered into and payment and receipt of earnest money made thereunder. They plead the statute of frauds against the alleged agreement, which was in parol. In reply the appellants plead that $500 was paid by them and accepted by the appellees, and that the same has been retained by them, and that they are therefore estopped from claiming that the agreement is not binding upon them, or from refusing to carry out the conditions thereof. Upon hearing the petition of appellants was dismissed.

It appears from the evidence that the land was listed with Witte for sale as 147.74 acres at $98 per acre, subject to a mortgage for $8,500 at 5 per cent., due in 1916, the crop of 1912 being reserved, the owner to pay the taxes of 1912. This listing was brought about through the agency or efforts of Roe; his transactions having been with A. A. Kugler, one of the owners. No question is raised as to the power of Kugler or Harold, otherwise Jack, Gardner, to bind all the owners of the land. The only question which we need to consider is whether there was an agreement between the parties as to terms of sale at the time the check for $500 was left with Kugler. On this question Witte testified that they, Witte and Roe, told Kugler in his office, on July 12th, that they would give them $95 per acre, and pay $500 down, $2,000 March 1, 1913, and assume the mortgage on the farm, and give back a second mortgage for the balance of the consideration, payable in five years at 6 per cent.; that Kugler said he did not think they could do that. He, Kugler, then talked with the Gardners over the telephone, one being at Stacyville and the other at Estherville, and then informed Witte that Gardner, at Estherville, would not take $95, but would take $98, but left it to Kugler and his brother at Stacy-

ville.   Witte further testified that he wrote out a check for
$500 and gave it to Kugler, who said, ''Now don't leave this
here on the $95 offer, because I don't think we could do that;
but I will take it on part payment on the $98 offer.''   On
cross-examination the witness testified that at the time he
gave the check to Kugler he had not offered $98 for the land,
and such offer was not made until later, when he saw Jack
Gardner at Stacyville.   He further said: ''We never told him
we left the check there on the $98 deal at the time.''   ''Had
not then made any other offer than $95.''   It also appears
from the testimony of Witte that after the alleged payment
of $500, but on the evening of the same day, he met Kugler,
who tendered the check back to him, saying that he had
talked with Gardner at Estherville, and that they were not
satisfied.   To this Witte replied that he had seen Jack Gard-
ner and bought the farm (for $98) to which Kugler replied
they had not bought it yet, and some question then arose as
to assuming the interest to March 1, 1913, on the $8,500
mortgage.

Roe, a co-plaintiff, testified as to the $500 transaction:

On the first start we gave Mr. Kugler a check for $500
to show him on the $95 deal when he talked with the boys that
we meant business and weren't fooling about it, and he took
the check that way, and then had his talk with them, and
wouldn't accept it as a payment at $95 an acre because they
wouldn't sell, he said, at $95 an acre; and we had a long talk
there, and we couldn't come to any agreement on the $95
deal, and so when we left to go and see Gardner at Stacyville,
we left the check there, and he said he wouldn't take the
check then of $500 on the $95 deal, but that he would accept
it on the $98 one as a $500 payment; I think those are the
very words he used.   (On cross-examination he further testi-
fied) :   When Witte handed Kugler the check he said there
was no use handing him that check on the $95 deal, and Mr.
Witte said, 'You will want to talk with the boys about it,
and we will hand you this check to show that we mean
business and mean to buy the land.'   Witte told him to take

that check so that if Jack Gardner called him up about this deal, Kugler could assure him that we mean business, and that was the statement that Witte made to Mr. Kugler when he handed him the check. The check was handed to Kugler in the forenoon at Mr. Kugler's office. When Kugler told Witte there was no use leaving any check on the $95 offer, Witte said: 'We will leave it here anyway, and if any one of the boys call you up and ask you about it, you can assure them we meant business because the check is here.'

That afterwards they went to see Jack Gardner at Stacyville and parol agreement was finally made to take the land at $98.

Kugler testified:

Well, Mr. Witte, when he pulled his checkbook out of his pocket, says, 'I will leave this check here for $500,' and started to write it out, and I said he didn't need to leave any check there at all, and that I wouldn't accept any check under any consideration until the details of the contract or agreement that we had been talking over more or less were finally settled and determined; then he said that he would leave the check there anyway to show that they meant business, and I said they didn't need to leave it there for any purpose; I said you don't need to leave a check here for any purpose whatever, and when the contract is finally determined you can make out your check, but he made the check out anyway, and went on, and left it there; laid it on the corner of the desk and went away with it there. He did not hand it to me, and I did not take it up from where he laid it till they returned from Stacyville. I went to give the check to him at that time; that was in the evening after supper. After the visit of Witte and Roe to Jack Gardner and upon their return I had a talk with them. They came and said they had bought the place, and I asked what arrangements had been made about the interest and taxes, and they said that nothing had been made; that they had made no arrangements in this respect; and I said, 'You don't get the place without paying interest for at least a part—you don't get the place without paying the interest or at least a part of it, from the time you buy it until it becomes due, March 1st, 1913,' and then he said that they had already bought the place, and I

said, 'You haven't unless you make some arrangement about the proposition of the interest, which has not been done,' and that was the time I told him about that, and wanted to give him back the check he left on my desk.

From the testimony of Harold (Jack) Gardner it appears that no talk was had between himself and Witte and Roe about assuming the interest; that he supposed the purchasers would pay the interest due March 1, 1913. The check which was left by Witte was tendered back to Witte and refused by him, and immediately thereafter was mailed to him by Kugler by registered letter, which Witte refused to accept, and the letter, with its contents, after being through the dead-letter office was returned to Kugler.

I. We have given sufficient of the testimony to indicate the real question in controversy, and that is whether, upon the acceptance of the $98 offer, proof of a contract of sale has been sufficiently shown, and, if so, if it was accepted without qualification by the owners of the land, whether the $500 payment of check is sufficient to remove the case in its proof from the prohibition of the statute of frauds. No claim is made that there was a meeting of the minds of the parties at the time the check was handed to Kugler by Witte. The whole evidence is conclusive that at such time it could not have been considered as a payment, and was not understood as having that effect; but, on the contrary, the greatest force that can be given to it was that it was left as an evidence of good faith on the part of Witte and Roe in their endeavor to purchase the land. The evidence further shows that at the time Kugler first offered to return the check to Witte, which was after the interview of appellants with Jack Gardner, at least between Kugler and the appellants, and we think from the weight of the testimony as between Gardner and the appellants, there was yet in dispute the question as to assuming interest on the $8,500 mortgage. Moreover, it is admitted by Witte that at the time the $500 check was handed to Kugler

1. REAL PROP-
ERTY: specific
performance:
oral contract:
evidence.

or laid upon his desk, no offer other than at $95 per acre had been made by him. We are satisfied from a reading of the evidence that there was a failure on the part of the appellants to show by clear and satisfactory evidence that there had been a meeting of the minds in the alleged parol contract, even upon the theory that the $500 check was to be applied upon a purchase of $98, and proof of that strength is necessary before a court is warranted in entering a decree for specific performance. *Collins v. Collins,* 138 Iowa, 470; *Wills v. Westendorf,* 140 Iowa, 293; *Kinman v. Botts,* 147 Iowa, 474; *Ross v. Ross,* 148 Iowa, 729.

II. The giving of the $500 check was in the first instance only conditional. If an offer of $98 was not accepted, no question could be raised against the right of appellants to have it returned to them. To give it the effect of payment it must have been exclusively referable to an agreement between the parties.

2. SAME: part payment: statute of frauds: evidence.

*Collins v. Collins, supra.* Admittedly none existed at the time; and, even though it may be urged that by their subsequent acts the appellees ratified or accepted it as payment, and this conclusion only can be reached by giving to the testimony the greatest force claimed for it by the appellants, there yet remains the question of proof of the agreement itself upon which such ratification could only be based, and this we are bound to hold was insufficient.

The decree of the trial court is *Affirmed.*

WEAVER, C. J., and LADD and GAYNOR, JJ., concur.