EARNEST PEDDICORD et ux., appellees, v. MELFORD L. PEDDICORD et al., appellants.

No. 47808.

(Reported in 47 N.W.2d 264)

April 4, 1951.

Charles I. Joy and Willis & Willis, all of Perry, for appellants.

Geo. J. Dugan and Geo. H. Sackett, both of Perry, for appellees.

Oliver, J.—Plaintiffs Earnest Peddicord and Maude Peddicord are husband and wife, as are defendants Melford L. and Edna Peddicord, and also defendants Raymond E. and Leatha Peddicord. The three men are sons of D. E. and Harriett Peddicord, deceased.

The real estate involved in this case is the former family home in Perry. D. E. Peddicord died testate in 1933 leaving a life estate in this property to his widow, Harriett, remainder to said three sons. After occupying it for a short time the widow leased it to others and resided elsewhere. Later she stayed at the home of one or another of the three sons. Earnest lived in Redfield. Melford and Raymond were farmers. Eventually her physical and mental health became impaired and she became discontented, disoriented, difficult to control and a source of worry and care to them.

This action is based upon an oral contract made in 1944 whereby plaintiffs promised to move from Redfield into the property in Perry and there care for, nurse and support Harriett as long as she lived. Witnesses for plaintiffs and defendants agree plaintiffs orally contracted to do this and that they performed their part of the contract. The witnesses agree also plaintiffs were orally promised, in return, an interest in the real estate. The basic disagreement is as to the quantity of such interest. Harriett Peddicord then had a life estate in the property. Plaintiff Earnest had a one-third interest in the remainder and defendants Melford and Raymond a two-thirds interest. Plaintiffs con-

tend it was agreed they should have this two-thirds interest. On the other side it is contended plaintiffs were to have only the right to live in the property as long as they wanted to, plaintiffs to pay taxes and keep the property in repair.

In July 1943 the three brothers had consulted with Robert E. Frush, an attorney at Adel, relative to a guardianship for their mother. Several months later they again called upon Mr. Frush. He instituted the guardianship proceeding and procured the appointment of Earnest as temporary guardian. January 26, 1944, Harriett was adjudicated incompetent and Earnest was appointed her permanent guardian. She was then eighty-six years old with an expectancy of 3.42 years, according to the mortality tables in the Code.

On the same day, while the three brothers were in conference with Mr. Frush, the question of Harriett's care and support was considered. In this discussion the brothers agreed the home in Perry was worth $4000 to $4500. Earnest testified Melford and Raymond proposed, if Earnest and his wife would move to Perry and take care of their mother as long as she lived "we would deed you that place." Earnest was then and had been for some time working at a plant in Ankeny, and living with his wife, Maude, in a house in Redfield.

Mr. Frush testified Melford, as spokesman for Melford and Raymond, proposed that Earnest and Maude move from Redfield into the property in Perry and make a home for their mother and care for and nurse her as long as she lived, saying: "When mother is gone you will have the property." Earnest said he would have to see about his work in Ankeny and talk to Maude. The three brothers then drove to Redfield together and contacted Maude. She testified Melford said, "Maude, I want you and Earnest to move to Perry and live in Mom's house and take care of her as long as she lives. If you will, we will deed you our share in the place." Raymond joined in the proposal. At Maude's request they repeated the proposition. She then said the care of old people was a problem and she wanted time to consider it.

Later Melford and his wife, Edna, came to Redfield and asked if their proposition would be accepted. Earnest and Maude accepted. Their son was present. He testified Melford said "if they would move to Perry and take care of Grandma as

long as she lived—Raymond and Melford would deed their share of the property over to the folks."

Defendants Raymond and Edna testified the agreement was, if plaintiffs would move to Perry and take care of Harriett as long as she lived and pay the taxes and keep up the place "they could live there as long as they wanted to." Melford's testimony added to this "for life if you want to."

Possession of the home in Perry was secured from the tenants who occupied it. Earnest left his job at Ankeny for a month and painted, repaired and cleaned the house. They moved from Redfield into it in March 1944 and there cared for and nursed Harriett Peddicord until her death in June 1945. Defendants admit she was given very good care.

█ █ I. Defendants contend the Statute of Frauds, section 622.32, Code of Iowa 1950, I. C. A., makes incompetent the oral evidence of the contract. The record shows plaintiffs took possession of the real estate and also fully performed their part of the contract. Either of these circumstances brings a contract within the exceptions referred to in Code section 622.33. However, defendants assert the performance and taking possession would have been the same in this case whether plaintiffs were to receive defendants' two thirds of the property absolutely or merely the right to occupy it for life. Hence, they argue those acts were not referable *exclusively* to the contract which the evidence for plaintiffs tends to establish, because such acts were equally referable to the contract claimed by defendants.

This argument is not well-founded. Sweeney v. O'Hora, 43 Iowa 34, 37, disposed of a like contention as follows:

"It is claimed * * * this possession is just as consistent with the defendant's claim respecting the contract, as with that of plaintiff, and that hence the possession is not unmistakably referable to the contract as claimed by plaintiff. * * * to take a case out of the operation of the Statute of Frauds, upon the ground of part performance of a parol contract, it is indispensable that the acts done should be referable exclusively to the contract. * * * But this does not mean that there should be an entire absence of conflict in the testimony. If this were so, the party against whom the specific performance is sought could almost always defeat the plaintiff by setting up some other

contract, to which the acts of part performance might be referred, and by producing some evidence * * * to support such contract."

See also Hutton v. Doxsee, 116 Iowa 13, 23, 89 N.W. 79; Hurst v. Jenkins, 161 Iowa 414, 143 N.W. 401; Williams v. Chapman, 242 Iowa 294, 46 N.W.2d 56, and citations. We hold the record warranted the conclusion of the trial court that the contract was brought within the exceptions to the Statute of Frauds.

■ II. To warrant specific performance of an oral contract to convey land the evidence as to the contract must be clear, satisfactory and convincing. Stem v. Nysonger, 69 Iowa 512, 514, 29 N.W. 433; Wills v. Westendorf, 140 Iowa 293, 296, 118 N.W. 376; Witte v. Gardner, 162 Iowa 117, 123, 143 N.W. 835; 49 Am. Jur., Specific Performance, section 169; 58 C. J., Specific Performance, section 553. As stated in Williams v. Chapman, 242 Iowa 294, 307, 46 N.W.2d 56, 63: "It is a well-recognized rule of this court that an oral agreement for a conveyance of land, or the transfer of an interest therein must be established by clear, convincing and satisfactory evidence * * *." (Citing authorities.)

■ The question here is whether the contract pleaded by plaintiffs was established by evidence of the quantity and quality required by the foregoing rule. During the conference in Mr. Frush's office, when Melford and Raymond were urging Earnest to move to Perry and care for their mother, it is admitted the three brothers discussed the value of the property and agreed it was worth about $4000 to $4500. This discussion and agreement of value is a circumstance which tends to support plaintiffs' case. If Earnest and his wife were to receive only the right to occupy it, the value of the property would be immaterial. However, if they were to have the property as compensation for their services its value would be material.

At that time the normal expectancy of the mother would have been about three and one-half years. The two-thirds share of the two defendant brothers in the property at the value above stated was worth about $3000. This would have allowed about $1000 per year for her care had she lived three years. Of course, plaintiffs were bound to care for her whether she lived one year or ten years. Hence, two thirds of the real estate would not

appear disproportionate in value to the burden assumed by plaintiffs.

The findings of fact recite the trial court accepted the testimony of Mr. Frush as to the terms of the offer made in his office by Melford and Raymond "as the absolute truth." Mr. Frush was the only disinterested person who heard the offer and the printed record indicates he was a fair and reliable witness. A strong case for plaintiffs was made by the testimony of other witnesses, and the surrounding circumstances. The findings of the trial court, who saw and heard the witnesses, are entitled to substantial weight. We agree the testimony of Mr. Frush and other witnesses for the plaintiffs relative to the terms of the offer is correct, and that the equities of the case are with plaintiffs. Defendants point out Mr. Frush testified the offer made was, "When mother is gone you will have the property" while other witnesses for plaintiffs testified Melford and Raymond said they would deed it. The cause of this variation may have been that the witnesses gave the substance rather than the words of the offer or that the offer was repeated at several different times and places and the identical language may not have been used on each occasion. However, the variation in form is not material because the meaning is the same.

Defendants complain the trial court found only that plaintiffs' case had been established by a preponderance of the evidence and did not find it had been established by clear, satisfactory and convincing evidence. It is a sufficient answer that the case is triable de novo on appeal and this court must determine that question for itself. The parties agree as to every detail of the contract except one—the interest in the property promised by Melford and Raymond. It is either (1) their two-thirds interest, or (2) the right to occupy that interest for life. A consideration of the entire record leads us to conclude the contract to transfer to plaintiffs the interest of Melford and Raymond in the property was established by clear, convincing and satisfactory evidence.

III. It is contended the court erred in including in the judgment the interest of Raymond's wife, Leatha. Code section 636.5 gives a surviving wife a one-third share in all real estate possessed by her husband during the marriage, not sold on

judicial sale and to which she has made no relinquishment of her right. This distributive share differs from common-law dower, but is frequently called dower. During the life of her husband this interest of the wife is inchoate and is in the nature of a burden or encumbrance upon the real estate. She has then no estate in the land which she can convey but she can release or relinquish her contingent interest to a third person who owns the property. Fowler v., Chadima, 134 Iowa 210, 111 N.W. 808; County of Louisa v. Grimm, 203 Iowa 23, 212 N.W. 324. It was not essential to the validity of Raymond's agreement to convey his interest in the real estate that Leatha be a party to it. However, his conveyance without a relinquishment of her inchoate right of dower would leave the property burdened or encumbered by it.

It is the rule in this state that upon the refusal of the vendor's wife to release inchoate dower in land the vendee may elect to enforce specific performance to the extent of the vendor's ability to perform, with allowance of an amount proportionate to the highest contingent interest of the wife, to be held by the vendee without interest and to be paid over by him only if and when the inchoate right is released by the wife or the marriage is terminated during the life of her husband by her death or by operation of law. Union Coal Mining Co. v. McAdam, 38 Iowa 663; Bradford v. Smith, 123 Iowa 41, 98 N.W. 377; Thompson v. Colby, 127 Iowa 234, 237, 103 N.W. 117; 11 Iowa L. Rev. 97 · et seq.; 46 A. L. R. 748, annotation 766.

The record does not show Leatha ever refused to relinquish her inchoate right of dower in the premises. No special defense was made for her on that ground. She merely joined in the answer of the other defendants. The answer did not suggest Raymond was unable to convey because Leatha would refuse to release her inchoate right of dower or that she did so refuse. Nor did Leatha testify in the case or give any reason for her failure to testify.

Plaintiffs' petition alleged Leatha had knowledge of the contract of Melford and Raymond with plaintiffs. This was not denied in the answer. The contract benefited her by relieving her of the burden of caring for Harriett part of the time. She visited Harriett frequently and appeared satisfied with the ar-

rangement and the care given Harriett. Leatha's refusal to relinquish dower would have subjected her husband to additional liability on that account.

■ ˙ Courts will not presume a wife will refuse to release dower. On the contrary, there is a presumption of harmony and unity of will between spouses. Where the unwillingness of the wife to relinquish her inchoate right of dower is relied upon as a defense to specific performance it should be pleaded and proved. Campbell v. Beard, 57 W. Va. 501, 50 S.E. 747; Deason v. Dobson, 250 Ala. 396, 34 So.2d 596; Miller v. Headley, 109 N. J. Eq. 436, 158 A. 118, 122, affirmed 112 N. J. Eq. 89, 163 A. 665; 49 Am. Jur., Specific Performance, section 104, page 123; 58 C. J., Specific Performance, section 515. Here there was neither such pleading nor proof. Hence, Leatha's inchoate right of dower was properly included in the judgment for plaintiffs.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.