WILLIAM J. HURST, et al., Appellees, v. P. R. JENKINS, et al.,
Appellants.

**Evidence:** SELF-SERVING DECLARATIONS. The declarations of a vendor
1   of land, made in his own interest and not in the presence of the
purchaser, are not admissible on an issue involving an agreement
to convey.

**Real property:** ORAL CONTRACT TO CONVEY: CONSIDERATION. A parol
2   agreement to care for the grantors during their natural life is a
sufficient consideration for their agreement to transfer the title to
certain real and personal property.

**Same:** STATUTE OF FRAUDS. Where parties orally agreed to transfer
3   certain real and personal property, subject to their life use jointly
with the grantees, in consideration of the care of the grantors during
their lives, and the grantees took possession of the property to the
extent agreed upon, the contract was taken out of the statute of
frauds.

**Same.** Under an oral contract for the transfer of real and personal
4   property in consideration for services to be performed, the per-
formance of the service constituted payment of the purchase price,
and therefore took the contract out of the statute of frauds.

**Same:** PERFORMANCE: EVIDENCE. An oral contract to transfer real and
5   personal property, upon the consideration that the grantees shall
care for the grantors during their natural lives, which has been
fully performed, may be enforced even as against the homestead.
Upon a consideration of the evidence in this case it is held that
plaintiffs had performed their contract.

*Appeal from Jackson District Court.*—HON. A. J. HOUSE,
Judge.

FRIDAY, OCTOBER 24, 1913.

ACTION in equity to establish the ownership of certain
real estate and personal property and to quiet title thereto in

plaintiffs.    Decree   for   plaintiffs.  · Defendants   appeal.—
*Affirmed.*

*C. M. Thomas,* and *P. B. Wolf,* for appellants.

*F. D. Kelsey, W. C. Gregory,* and *Keck & Keck,* for
appellees.

PRESTON, J.—Thomas E. Ellwood and his wife, Sarah
Ellwood, were childless.   When plaintiff Alma Hurst was
eleven years of age, she was taken into their home, where she
remained until their death.   She was raised and educated by
them and was treated as their own child.   She conducted
herself toward them as a dutiful daughter would toward
parents.   In May, 1906, she contemplated marriage with
William J. Hurst.   At that time her foster parents were
advanced in years and in poor health.   They were averse to
her leaving them.   It is alleged by plaintiffs that before their
marriage Mr. and Mrs. Ellwood desired that plaintiffs take
up their residence and live in the home of the said Ellwoods
and nurse and care for them during the remainder of their
lives; that said Ellwood and wife orally promised and agreed
with plaintiffs that upon plaintiffs being united in marriage,
if they would live in the home of said Ellwood and wife and
nurse and care for them so long as they lived, plaintiffs should
have and be vested with the absolute ownership and title to
the real estate and the personal property therein, subject
only to the use of said property by said Ellwood and wife
jointly with plaintiffs so long as said Ellwood and wife should
live; that in pursuance of said agreement plaintiffs entered
into the possession of the property about May 23, 1906,
jointly with the said Ellwoods and lived with them in said
home and nursed and cared for them until their death and
fully performed said contract.   Plaintiffs were married about
the date of the contract.

Thomas E. Ellwood died December 8, 1910, and his wife

December 19, 1911. She died intestate and did not by deed vest the legal title in plaintiffs. Defendants are relatives of the Ellwoods. The administrator of both estates is also a party to the action. Before his death, Mr. Ellwood deeded the real estate to his wife and made a bill of sale or assignment of the personal property to her. He also made a will giving all the property to her.

Many errors are assigned as to the admissibility of certain evidence, but the case was tried in equity. No rulings were made by the trial court on objections to evidence, and no evidence was excluded. Incompetent evidence was introduced by both sides. Plaintiffs testified to personal transactions and communications with the Ellwoods, as did some of the parties defendant.

Defendants introduced declarations of the Ellwoods which were self-serving and hearsay. Such statements of the Ellwoods, not in the presence of the plaintiffs, would not be competent or binding upon plaintiffs.

1. EVIDENCE: self-serving declarations.

*Albright v. Albright,* 153 Iowa, 397, 404. Improper evidence has not been considered. It should be said that the Ellwoods did not care to have their relatives know of the arrangement with plaintiffs. This appears from a letter from Mr. Ellwood to one of the plaintiffs hereafter referred to and from other evidence in the record.

It is well settled that a parol agreement to perform such services is a sufficient consideration to support an agreement for the transfer of title to real estate; and if the agreement is established by the quantity and quality of evidence required in such cases, and there has been a performance of the contract, the agreement is binding and enforceable. Under such circumstances, the contract is taken out of the statute of frauds, or rather it comes within the exceptions to that statute. We do not deem it necessary to review the many cases. We shall content ourselves with the citation of some of them. *Stem v. Nysonger,* 69 Iowa, 512; *Drake v. Painter,* 77 Iowa, 731; *Winkleman v.*

2. REAL PROPERTY: oral contract to convey: consideration.

*Winkleman,* 79 Iowa, 319; *Harlan v. Harlan,* 102 Iowa, 701, 703; *Soper v. Galloway,* 129 Iowa, 145; *Stiles v. Breed,* 151 Iowa, 86; *Chehak v. Battles,* 133 Iowa, 107; *Brandes v. Brandes,* 129 Iowa, 351; *Mueller v. Batcheler,* 131 Iowa, 650; *Baker v. Syfritt,* 147 Iowa, 49; *Bird v. Jacobus,* 113 Iowa, 194; *Chantland v. Sherman,* 148 Iowa, 352, 358; *Albright v. Albright,* 153 Iowa, 397; *Sires v. Melvin,* 135 Iowa, 460. Some of these cases involve the question of a gift, and some a contract, and improvements made on the property as part performance. In the case at bar improvements were made by plaintiffs.

Appellants rely on the statute of frauds and the alleged insufficiency of the evidence and say that there was no change of possession under the contract. The statute (section 4625)

3. SAME: statute of frauds. provides that, except when otherwise specially provided, no evidence of certain contracts is competent unless in writing, etc., and refers to contracts in relation to the sale of personal property when no part of the property is delivered and no part of the price paid, and those for the creation or transfer of any. interest in lands, and section 4626 relates to exceptions to certain provisions in the preceding section and reads in part: "Nor do those (provisions) of the fourth subdivision apply where the purchase money, or any portion thereof, has been received by the vendor, *or* when the vendee, with the actual or implied consent of the vendor, has taken and held possession thereof under and by virtue· of the contract, *or* when there is any other circumstance which, by the law heretofore in force, would have taken the case out of the statute of frauds."

In this case there was both payment of the purchase price by rendering services as agreed, and possession under the contract, so far as possession was contemplated or possible under the contract, as well as performance of the contract on the part of plaintiffs. The question does not depend upon change of possession alone under the facts of this case. It was the desire of plaintiff William J. Hurst that upon his marriage he

and his wife should live by themselves, but, at the request of the Ellwoods and because of the contract, they went into the home of the Ellwoods.

As to the personal property in controversy, the services, if performed, are a part of the purchase price. If the contract was performed by plaintiffs and services performed under it, this was a payment of the consideration or purchase money. The same is true as to the real estate. *Devin v. Himer,* 29 Iowa, 297; *Stem v. Nysonger, supra; Fisher v. Koontz,* 110 Iowa, 498, 503; *Estate of Strange,* 131 Iowa, 583, 594-6.

4. SAME.

This question as to the personal property is not argued by appellants. As to the real estate, we are satisfied, after a careful reading of the evidence, that the contract was made as alleged; that plaintiffs fully performed their part of it, accepted the property, and took possession of the real estate (as well as the personal property), in so far as they were to have possession under the contract during the lifetime of the Ellwoods. They were in possession after the death of the Ellwoods and at the time of the trial. The court decreed that they were the owners and vested the title in them. No homestead question has been argued, but it has been held that such a contract may be enforced as against the homestead. *Drake v. Painter, supra.*

5. SAME: performance: evidence.

The question in the case is largely one of fact whether the contract was established and performed by plaintiffs. We ought not to take the space to review the evidence in detail. Some of it will be referred to and our conclusion stated. Much of the testimony on behalf of plaintiffs is uncontradicted. There is testimony as to some statements made by plaintiffs which appellants claim are not consistent with their present claim. Some of these are denied by plaintiffs; others are explained.

The statement by the plaintiff William J. Hurst, after the death of Mrs. Ellwood, that he had asked or advised Mrs.

Ellwood to make some disposition of the property, and that "he guessed as it was now he would get nothing," should be considered in connection with the circumstances under which the statement was made, and his knowledge of his legal rights, and all the other facts in the case. He is not a lawyer. His knowledge of titles and the vesting thereof was doubtless limited to conveyances in legal form. It shows, we think, that he had in mind the contract and its performance by himself and his wife, and, because there had been no deed or will, they might be deprived of the property. He had asked Mrs. Ellwood to make a conveyance. There was no impropriety in this, and it is consistent with plaintiffs' claim. That she did not do so will not defeat plaintiffs. Under the circumstances, she held the legal title in trust for plaintiffs.

Aside from this, we are satisfied from the record that when Mr. Ellwood made the deed, will, and bill of sale, and before that, he and his wife were in complete accord and understood that plaintiffs were to get the property either by reason of the parol contract or by the wife vesting them with title. Plaintiffs were the equitable owners, and it was a completed transfer, except the legal title. Her husband had told her to sign nothing. He had been a practicing lawyer and no doubt understood the force of a parol contract after performance by the other party. She did say at one time, when she was told that she could make a will or deed, that she would think it over and decide which way she wanted to do it. At another time, about two weeks before her death, in speaking of her property, she said she had not decided whether to make a will or a deed. These statements were made to the witness Keck, who testifies further:

She came into my office and called for me, and she said that Mr. Ellwood had told her if anything happened to come to me; that I understood his business. And in that conversation she asked me, or I explained to her, about how the property was, and she had a deed and assignment with her, and then she asked me this question, 'How does the property stand

and what will become of it as it stands?' I answered it that the property would go to her relatives. 'Well,' she says, 'that is not my understanding with Thomas.' I says, 'What was your understanding with Thomas?' She says, 'The home is to be Alma's and Will's and the balance of the property is to be divided equally between my relatives and Mr. Ellwood's relatives.'

The same witness testifies to a number of conversations with Mr. Ellwood, prior to those with Mrs. Ellwood just referred to, in which Mr. Ellwood said in substance, when plaintiffs were away on their wedding trip, that Mrs. Ellwood had been sick and that they had agreed with plaintiffs that if they would get married at that time and live with them and stay with them during their lifetime the home just as it was would be theirs. That plaintiffs were married a year sooner than they intended at the request of the Ellwoods. At another time Mr. Ellwood said to this same witness (and this was at the time the will, deed, and bill of sale were made): "I just came down from home, and Ma has agreed to carry out our agreement with the folks." The same witness testifies to still another conversation with Mr. Ellwood and says: "Yes, he called me up to the house when he was sick there, and that was while Mrs. Ellwood was away some place, I don't know whether his last sickness or not, following that; it was anyway between that and the time he died; and he alluded to this (to the home there) that it would be Alma's. She was there. Alma was there. The home and contents would be theirs just as it was. On a number of occasions he also referred to it in this way: The home just as it was."

The witness Darling testifies to conversations with Mr. Ellwood in which he stated the contract to be as plaintiffs claim; that he told Mrs. Ellwood what her husband had told him; and she said that was the understanding.

Many disinterested witnesses testified as to similar conversations with both Mr. and Mrs. Ellwood.

Plaintiffs lived in the property from the time of their

marriage until the death of Mr. and Mrs. Ellwood.  They
nursed them in sickness.  They made permanent improve-
ments on the property, with the knowledge and consent of
both Mr. and Mrs. Ellwood.  There is no evidence of any
disagreements between plaintiffs and the Ellwoods; on the
contrary, both Mr. and Mrs. Ellwood regarded them and
their child very highly.  They called plaintiffs their chil-
dren and treated them as such.  December 10, 1909, while
Mr. Ellwood was in Iowa City for medical treatment, as we
understand the record, he wrote one of plaintiffs a letter,
from which we quote:

My dear Willie:  I am glad to get your kind letter of
the 7th inst.  I have been a little dilatory in writing of late
because I sleep about all the time.  .  .  .  I feel fairly good.
.  .  .  Willie, you take $60 of that Tesh money and send me.
I haven't got quite money enough I guess to put me through.
.  .  .  Whatever you do, Willie, is all right with me.  It
always has been and always will be right with me.  I am glad
you got the Tesh money.  .  .  .  Fix everything to suit your-
self.  It will be all right, my child, don't worry about me
being dissatisfied, for I never am.  I am so glad baby is all
right again.  The little dear, I fear she will forget her grandpa,
for I am away from her so much.  .  .  .  I do hope you will
all keep well.  .  .  .  Willie, sub rosa, pay no attention at
all to what Mary says.  .  .  .  As to the auto house, there
is not one word of truth in it, for you know I was right there
at the time and helped you lay out the grounds and set the
stakes, etc., etc.  I have no objections at all, perfectly willing.
Both Ma and I could live ten lifetimes, if need be, with you
and Alma, if outsiders would keep their noses out.  You just
do whatever anything you think for the best and I assure you
it will be all right and I will be fully satisfied.  I know we have
to bear a good deal in some ways from M, but it seems we can't
help it.  .  .  .  I have borne it now for nearly thirty-five
years.  Sometimes I had to bite my tongue.  I wish you would
take the time and just sit down and write your father a good,
long, kind letter.  .  .  .  Love to all.  T. E. Ellwood.'

It is claimed the Mary referred to in the letter is one of

the defendants, a sister of Mrs. Ellwood. There was other evidence than that here referred to.

From all the evidence, the trial court was fully justified in rendering a decree for plaintiffs, and it is therefore *Affirmed.*

WEAVER, C. J., and LADD and EVANS, JJ., concur.