Irene M. **CALLON**, Dennis Callon and
Diane Callon Brenneman, Appellees,

v.

Floyd E. **CALLON** and Vivian E. Shimon,
Appellants.

No. 54415.

Supreme Court of Iowa.

April 9, 1971.

James W. Hudson, Pocahontas, for appellants.

F. C. Gilchrist, Jr., Laurens, for appellees.

REES, Justice.

This is an action in equity brought by Irene M. Callon, surviving widow, Dennis Callon and Diane Callon Brenneman, children and issue of the marriage of the plaintiff Irene M. Callon and her deceased husband, Raymond Callon, to enforce an alleged agreement entered into in June, 1943, by and between the defendant Floyd E. Callon and Raymond Callon, now deceased. The defendant Vivian E. Shimon is a daughter of her co-defendant Floyd E. Callon, with whom defendant Floyd E. Callon entered into a written contract for the sale of the farm premises which are the subject matter of the cause, said contract having been entered into on November 22, 1968. Defendants appeal from a decree and judgment of the trial court finding plaintiffs had established by clear, satisfactory and convincing testimony the agreement made in 1943 and its performance by plaintiffs Irene and Dennis Callon and by Raymond Callon, deceased. We affirm the trial court.

In June, 1943 Raymond Callon, who was about to be married to plaintiff Irene Callon, held a meeting with defendant Floyd Callon and his wife, Evelyn. Raymond Callon was then 26 years of age. Defendant Floyd Callon at that time submitted an offer to Raymond Callon in which he held out the proposal that if Raymond were to remain on the farm after his marriage, do all of the farm field work, the crops were to be sold in the name of defendant Floyd Callon, and that Raymond and his family would receive amounts sufficient to pay the family living expenses and the farm operating expenses would be paid by defendant Floyd, and that the payments of principal and interest on the mortgage on the farm were to be paid, and when the mortgage was retired and paid off entirely, the profits from the operation of the farm were to be divided 50–50. Defendant Floyd Callon further agreed that he would make a will wherein he would provide for a life estate in the farm premises to his wife, Evelyn, in the event she survived him, and upon her death the farm would become the property of Raymond. The offer was accepted by Raymond by Raymond saying, "That's the way we will do it, Dad."

Floyd Callon was at that time and continued to be occupied in the work of doing custom corn shelling. After Irene and Raymond were married, they lived in the Floyd Callon home with Raymond's parents until a second house was erected on the farm premises, which Raymond and Irene occupied, and in which Irene and her son Dennis still live. The second house was a rebuilt dwelling which had been purchased by defendant Floyd, was torn down and moved to the Callon farm and reconstructed. The foundation and plastering and the frame work of the house were done with hired labor, but Raymond and Irene, with the help of neighbors, did the rest of the building on the house, and completed it in November, 1944.

Raymond Callon did repair work on the farm buildings, cleared rocks out of the pasture, built a chicken house, made improvements to the house by installing cupboards and linen closets and a furnace, and put an addition on the back porch. All of the materials which went into such improvements were paid for by Raymond and Irene. Raymond and Irene also installed a bathroom in their dwelling, straightened up the barn, installed feeding floors and painted the farm buildings. They paid for all of the materials for such work. In addition, Raymond in his lifetime installed hardwood floors in his parents' home, dropped the ceilings in certain of the rooms, doing all of the labor himself, but with the materials being paid for by his father.

Floyd Callon's wife, Evelyn, died in 1964. In June of 1965 Raymond Callon became ill and after an exploratory operation he was diagnosed as having a ter-

minal cancer. After his illness was so diagnosed, a meeting between Raymond, the plaintiffs Irene and Dennis Callon, and the defendant Floyd was held in June, 1965. Raymond advised his father that he had been told by his doctors that he had a cancer, and that he would never again be able to work in the field. In response to this statement, Floyd Callon said to him, "You don't have to worry about a thing." That he would make sure everything stayed the same. Raymond died October 27, 1965.

At the meeting between Raymond, Irene, Dennis and Floyd Callon in June of 1965, and after Raymond had informed his father that he would not be able to do field work, Raymond asked his father if Dennis could continue doing the field work in his place. In response thereto the defendant Floyd Callon said it would be all right for Dennis to do the farm work, and that everything would remain the same. During his father's terminal illness, and following his death, Dennis continued to operate the farm with his mother on the same 50–50 basis, the grain being sold in the grandfather's name and the division of proceeds made between Floyd, Irene and Dennis. The 50–50 division of proceeds from the operation of the farm has attended ever since the mortgage was retired in 1960.

Some time shortly subsequent to Raymond Callon's death, plaintiff Irene Callon went to the office of Mr. Desmond Crotty, an attorney in Pocahontas, for the purpose of securing his professional services in connection with the probate of her husband's estate. Her father-in-law, Floyd Callon, accompanied her to Mr. Crotty's office. After having retained Mr. Crotty to represent the fiduciary of Raymond Callon's estate, a conversation ensued in which Mr. Crotty was advised of the arrangement between Floyd, Raymond and Irene with respect to the Callon farm, as above detailed, and of the further discussion between the parties at the time it became known Raymond would not be able to continue the field work when he had been diagnosed as having a terminal illness. At that time,

defendant Floyd Callon advised Mr. Crotty that because of the death of Raymond, he intended seeing his own attorney to have his will changed to leave a life estate in the farm to Irene Callon and the remainder over to her children, Dennis and Diane. Mr. Crotty testified that the same statement in substance was made to him by Floyd Callon on several occasions when he came to Mr. Crotty's office. The amiable relationship between Floyd Callon and Irene became strained when he accused her of stealing a clock and a set of ornamental horns, this accusation having been made in January, 1967. The following month, when Irene went to her father-in-law's home to take care of the housework, he laid hands on her and pulled her over on his lap and asked her to marry him. After this incident, Irene never again went alone to her father-in-law's home, was always accompanied by Dennis, and Dennis took his grandfather to task for having so treated his mother.

The contract between Floyd Callon and his co-defendant, the daughter Vivian Shimon, was entered into on November 22, 1968, provided for a sale of the farm premises at $400 per acre, a $500 down payment, and interest at five and one-half percent per annum with principal payments extending over a period of 20 years. It appears from the record that Floyd Callon knew at the time he entered into the contract with Vivian Shimon, the fair and reasonable market value of his farm was $600 per acre. After the relationship between Floyd and Irene had worsened, he served notices to terminate tenancy upon Irene and Dennis, but took no further action after they had been served to remove Irene and Dennis from the premises.

■ I. In their first proposition upon which they rely for reversal, the defendants contend the oral evidence introduced by plaintiffs in attempting to prove a contract for the creation or transfer of an interest in lands is not competent under the statute of frauds as set forth in section

622.32(3), Code, 1966. Defendants insist the plaintiffs are attempting to prove two oral contracts for the transfer or creation of an interest in lands, and assert that an oral contract was first entered into between defendant Floyd Callon and Raymond and Irene Callon in 1943, and that a second oral contract was entered into between Floyd Callon and Raymond and Irene Callon in 1965 just prior to Raymond's death. We are unable to concur in this interpretation of the evidence. We interpret the record evidence as establishing a contract entered into in 1943 between Floyd Callon and his son, Raymond, and subsequently ratified and confirmed in 1965. Still later, following the death of Raymond, the contract relationship was admitted to have been in existence by Floyd Callon.

Defendants insist the only reasonable inference that can be drawn from the record is that a relationship of landlord and tenant, and nothing more, existed between Floyd Callon and Raymond Callon, and that there is nothing in the record which discloses a consideration to support a contract such as claimed by the plaintiffs.

Section 622.32(3), Code, 1966, provides,

"Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent:

"3. Those for the creation or transfer of any interest in lands, except leases for a term not exceeding one year."

Section 622.33, Code, 1966, provides,

"The provisions of subsection 3 of section 622.32 do not apply where the purchase money, or any portion thereof, has been received by the vendor, or when the vendee, with the actual or implied consent of the vendor, has taken and held possession of the premises under and by virtue of the contract, or when there is any other circumstance which, by the law heretofore in force, would have taken the case out of the statute of frauds."

Defendants cite and rely upon Davis v. Davis (Iowa), 156 N.W.2d 870, and on In re Estate of Lindsey, 254 Iowa 699, 118 N.W.2d 598. In Lindsey, *supra,* the court said,

"It has been a long-recognized rule of this court that any conduct, acts, or circumstances offered to show 'part performance' in order to bring a case within the exception of the statute of frauds must be referable exclusively and unequivocally to the contract." See 254 Iowa at 711, 118 N.W.2d at 605.

It is to be noted that our statute does not forbid oral contracts or render them invalid, but relates merely to the manner of proof. See Estate of Lindsey, supra, 254 Iowa at 711, 118 N.W.2d at 605, and citations of authority there noted.

There is evidence of benefit to the vendor and detriment to the vendee. For a period of 17 years a portion of the fruits of the labor of Raymond Callon went toward the retirement of the principal of a real estate mortgage on the farm and the payment of interest thereon. That this arrangement had been entered into at the time of the formation of the relationship originally, there seems to be no question. That Raymond Callon in his lifetime made valuable improvements to the farm, at his own expense, and with his own effort, likewise seems to be definitely established. Such conduct is not consistent, in our judgment, with the ordinary relationship of landlord-tenant, and is indicative of the existence of a contract, and constitutes, in our judgment, part performance referable exclusively and unequivocally to the contract itself. They do not admit of explanation without reference to the contract as such acts and circumstances would not be consistent with the ordinary relationship of landlord-tenant, and are more directly referable and consistent with the relationship of vendor-vendee. In re Estate of Karr, 235 Iowa 351, 368, 16 N.W.2d 634, 642.

Certainly, "purchase money" referred to in section 622.33, Code, includes a

performance of services in the future under a promise so to do when the services are thereafter performed. Vanston v. Rupe, 244 Iowa 609, 619–620, 57 N.W.2d 546, 552; Williams v. Chapman, 242 Iowa 294, 307, 46 N.W.2d 56, 65; Fairall v. Arnold, 226 Iowa 977, 997, 285 N.W. 664, 669; Hurst v. Jenkins, 161 Iowa 414, 418, 143 N.W. 401, 403; Daily v. Minnick, 117 Iowa 563, 569, 91 N.W. 913, 915. The performance of services by Raymond Callon, Irene Callon and Dennis Callon, we find, are directly referable to the contract entered into between defendant Floyd Callon and Raymond Callon in 1943 and subsequently ratified and confirmed by him in the manner and at the times above referred to.

■ II. In their second proposition upon which they rely for reversal, the defendants assert the burden of proof was upon plaintiffs to prove their case by clear, satisfactory and convincing evidence and that plaintiffs failed to sustain said burden. We have before us the testimony of the parties involved and the testimony of Mr. Crotty, an attorney, to whom defendant admitted on several occasions the existence of a contract as contended for by plaintiffs.

In its findings of fact the trial court found and reached a conclusion the plaintiffs had established by clear and convincing evidence the existence of the original oral contract between Floyd Callon and Raymond and Irene Callon in 1943, and modified after the death of Raymond Callon, the acceptance of the contract by all parties concerned and its performance and reliance thereon on the part of Raymond Callon during his lifetime and thereafter by Irene and Dennis Callon, and that said contract or agreement had not been abrogated or terminated. The court noticed particularly the equivocation of the defendant Floyd Callon in testifying as to the relationship with his son, daughter-in-law and grandson. The trial court properly found, as we view the record, that it is difficult to give much credibility to the testimony of the defendant Floyd Callon in the light of his unwillingness to testify directly and forthrightly.

The trial court properly determined that part performance of the oral contract with reference to the creation or transfer of the interest in the lands which are the subject matter of this controversy had been established, under the exception set forth in section 622.33 of the Code, and found the oral testimony proving the contract was admissible. The court reiterated the language of this court in Davis v. Davis, *supra,* 156 N. W.2d at 876, "The true basis of the doctrine of part performance, according to the overwhelming weight of authority, lies in the principles of equitable estoppel and fraud; it would be a fraud upon the plaintiff if the defendant were permitted to escape performance of his part of the oral agreement after he has permitted the plaintiff to perform in reliance upon the agreement", citing Fairall v. Arnold, *supra,* 226 Iowa at 986, 285 N.W. at 669, and from the annotation in 101 A.L.R. 935.

■ III. As this case sounds in equity and our review is de novo, we have given weight to the trial court's findings of fact and its consideration of the credibility of the witnesses; rule 344(f) (7), R.C.P.

We conclude, as did the trial court, defendant Floyd E. Callon is estopped from changing his position to the prejudice of the plaintiff Irene M. Callon, who acted in reliance on the agreement and representation made in June, 1943, and the later acknowledgment and confirmation of it following the death of Raymond Callon.

We find no reversible error, and affirm the trial court.

Affirmed.

All Justices concur.