# CHARLESTON.

LAZZELL *et als.* v. KEENAN *et als.*

Submitted October 26, 1915.   Decided November 9, 1915.

1. VENDOR AND PURCHASER—*Contract to Convey—Warranty Deed—Release of Dower.*

   A contract in writing for the sale of land signed by the vendor, binding him to execute to the purchaser a deed with covenants of general warranty and against encumbrances, upon the payment of a certain portion of the purchase money, entitles the purchaser to a deed in which the vendor's wife joins, thereby releasing her inchoate dower.   (p. 188).

2. SAME—*Contract—Breach of Vendor—Election of Remedies.*

   In such case, if the vendor's wife refuse to release her dower, the purchaser may elect to rescind the contract; or he may enforce performance of it, taking such title as the vendor can make, with covenants against encumbrances.   (p. 188).

3. CONTINGENT DOWER—*Right to Retain Indemnity.*

   *Query:* Whether the purchaser is entitled to retain a part of the purchase money as indemnity against the wife's contingent dower?   (p. 188).

4. HUSBAND AND WIFE—*Estoppel—Equitable Mortgage—Deeds.*

   Where a husband, by deed to his wife, creates a lien in the nature of an equitable mortgage upon his land, to secure money advanced by her to him, and she thereafter joins him in the execution of a trust deed to secure a loan of money to him, she is estopped to assert her own prior lien against such creditor.   (p. 188).

5. SUBROGATION—*Purchaser of Incumbered Property—Rights—Husband and Wife.*

   If such trust lien is more than the land is worth, and the husband thereafter sells the land at a fair and reasonable price, but for less than the amount of the lien, the purchaser has a right to have the purchase money applied to the discharge of the lien, *pro tanto,* and to be subrogated to the rights of the creditor as against the wife's prior lien and contingent dower.   (p. 188).

6. SPECIFIC PERFORMANCE—*Parties—Adverse Claimants—Vendor and Purchaser.*

    In a suit for specific performance, the purchaser of land subject to liens and adverse claims derived from the purchaser, uncertain in amounts and indefinite in character, may make the lienors and claimants parties for the purpose of having their claims ascertained and, if possible, discharged out of the purchase money. (p. 188).

    (MASON, JUDGE, absent.)

Appeal from Circuit Court, Monongalia County.

Suit by Rufus F. Lazzell and others against Leonidas H. Keenan and others. From a decree for plaintiffs, defendants appeal.

*Affirmed.*

*W. S. Meredith,* for appellants.

*Cox & Baker,* for appellees.

WILLIAMS, JUDGE:

    Mrs. Elizabeth Keenan has appealed from two decrees of the circuit court of Monongalia county, entered on the 15th of July, 1912, and the 5th of February, 1913, respectively, in this suit, brought by Rufus F. Lazzell and others against Leonidas H. Keenan and appellant, his wife, and others, for the purpose of enforcing a contract ·for the purchase of 83.637 acres of coal, together with the privilege of mining and removing the same, made on the 10th of July, 1909, between Leonidas H. Keenan and Rufus F. Lazzell. Appellant refused to join her husband, the vendor, in a deed ·to said Lazzell for the coal, claiming to be herself the owner thereof. There was a trust deed lien on the coal to secure a note of $3,500, payable to Joseph Keener, executed by Keenan and his wife to I. G. Lazzell, trustee, several years before the contract sued on was made; and the trustee and *cestui qui trust* were also made parties to the bill. Appellant and her husband demurred and answered separately, and plaintiffs replied generally, and the cause was heard upon the pleadings, depositions taken by plaintiffs and by defendants and upon argument of counsel, when the decrees appealed from were entered.

    By the first of said decrees the court settled the principles

of the cause and decreed performance of the contract accord-
ing to the prayer of the bill, holding that the interest of ap-
pellant in the coal amounted only to a mortgage, and referred
the cause to a commissioner to settle the accounts between
the vendor and vendee; to ascertain and report the value of
Elizabeth Keenan's inchoate dower in the remainder of the
purchase price of the coal, after deducting the amount of the
trust debt secured to Joseph Keener; to ascertain the amount
of said trust debt; and to ascertain and report any other liens
against said property. The commissioner completed his re-
port on the 31st of December, 1912, and reported that the
balance due from Lazzell to Keenan on the purchase price of
the coal was $14,190.19; that the value of Elizabeth Keenan's
inchoate dower, after deducting the aforesaid trust debt, was
$2,739.66, as ascertained by the annuity tables in section 17,
chapter 65, Code, she being then forty-three years of age; that
the balance due on the trust debt was $3,500, interest having
been paid thereon by Rufus F. Lazzell to April 7, 1913; that
the following liens also existed on said property, viz.: taxes
for the year 1912, $65.55, and a deed of trust executed March
5, 1912, by said Keenan and wife to T. S. Lackey, trustee, to
secure a note of $16,000, payable to Citizens Title & Trust
Company of Uniontown, Pennsylvania, three years after date,
with one year's interest paid on same.

Elizabeth Keenan excepted to the report because it failed
to report a lien claimed by her to have been proven to exist,
and to be for money advanced by her to her husband prior to
December 3, 1903. The Citizens Title & Trust Company also
excepted to the report because its trust deed was not reported
as a lien upon the purchase money for the coal as provided in
said trust deed, which it had filed before the commissioner.
That lien was not created until sometime after the suit was
brought, and hence neither said company nor its trustee were
parties to the bill. But, by order entered on the 11th of
January, 1913, they were permitted to file their petition and
become parties; and process was awarded thereon against
plaintiffs and defendants, returnable to the 28th of January,
1913.

The cause was again heard on the 5th of February, 1913,
upon the commissioner's report, the aforesaid exceptions

thereto, the petition of Citizens Title & Trust Company and its trustee and process thereon, duly served upon plaintiffs and defendants or accepted by their counsel, and upon argument of counsel. The court overruled the exception of Mrs. Keenan and sustained the exception taken by the Citizens Title & Trust Company, and confirmed the commissioner's report in all other respects; and decreed the debt due the said Citizens Title & Trust Company to be a lien on the balance of the purchase money due from Lazzell to Keenan, after payment of taxes and the I. G. Lazzell trust debt, which the court found to be then owned by The Farmers & Merchants Bank, of Morgantown.

The trust deed to secure the Citizens Title & Trust Company was executed March 5, 1912, by both Keenan and his wife, conveying the coal purchased by Lazzell. It recited the pendency of this suit and provided, in case a decree was entered against the Keenans, that all the purchase money to become due and payable by Lazzell to the Keenans, "or either of them," should be applied on said trust debt. The court further decreed that Rufus F. Lazzell, David H. Courtney and Colmore T. Lazzell were jointly interested in the purchase, and were entitled to have the contract of sale made by Keenan to Rufus F. Lazzell specifically performed by Keenan, and were entitled to have the purchase money so applied as to protect them against the liens on the coal, including the lien on the purchase money in favor of the Citizens Title & Trust Company, and were also entitled to be protected against the inchoate dower of Elizabeth Keenan; and decreed specific performance of the contract according to its terms, requiring L. H. Keenan to execute to R. F. Lazzell for himself, David H. Courtney and Colmore T. Lazzell, a good and sufficient deed, with "general warranty of title and free from all encumbrances," conveying to him the 83.637 acres of coal, together with the mining rights and privileges owned by said Keenan, and permitting Keenan to retain a vendor's lien to secure the deferred payments aggregating $8,427.40, which sum was decreed to be payable in two equal annual instalments with interest from the date of the deed. The decree authorized Lazzell to pay said sums to the clerk of the court in order that they might be applied in discharge of the liens. It also made

provision for the execution of a deed by John Shriver, a special commissioner appointed for that purpose, in the event Keenan should fail, for the period of thirty days from the date of the decree, to make the required deed.

Lazzell had paid into court $5,762.79, ascertained to be the balance of a $6,800 payment, which the contract provided was not to bear interest and was to be paid upon delivery of a proper deed to Lazzell, and the decree applied that cash sum: first, to the payment of plaintiffs' costs; second, to the discharge of the taxes due W. H. Brand, late sheriff; third, to the discharge of the $3,500 trust debt due the Farmers & Merchants Bank, and provided that, if said debt was not paid until after the 7th of April, 1913, interest thereafter accruing should also be paid out of said fund; and, fourth, the balance then remaining was to be applied on the trust debt due the Citizens Title & Trust Company, the court holding that, by her joining her husband in the execution of that trust deed, as well as the one to I. G. Lazzell, trustee, Elizabeth Keenan had released her inchoate dower in the coal and mining rights in favor of the creditors thereby secured. The decree further provided, that when the deferred payments for the purchase money, and interest thereon, should be paid the property should stand released from the aforesaid liens, and from Elizabeth Keenan's inchoate dower.

The contract which the aforesaid decrees specifically enforced bears date July 10, 1909, and was signed and acknowledged by L. H. Keenan and R. F. Lazzell, and recorded in Monongalia county on the 12th of July, 1909. It states the consideration for the 83.637 acres of coal to be $16,727.40, $1,500 of which was acknowledged in the agreement to be paid in cash; $6,800 was to be paid upon delivery of a deed and was not to bear interest until then. It describes particularly the tract of coal, and includes all mining rights and privileges owned by the vendor. Its concluding paragraphs, which are the parts material to the present controversy, are as follows:

"The party of the first part agrees to make a good and sufficient deed of General Warranty *free from all encumbrances* for the property and mining rights agreed to be sold and acknowledged and deliver the same to the party of the

second part under this agreement within 20 days from this date.

"The party of the second part shall have the right to apply the deferred purchase money to any liens or encumbrances existing upon said coal and mining rights and privileges hereby agreed to be sold and conveyed. This agreement cancels all previous agreements between the parties."

Mrs. Keenan claimed to be the sole owner of the coal, under a deed from her husband, bearing date December 3, 1903, acknowledged by him and recorded in Monongalia county on October 25, 1905, and refused to join her husband in the execution of a deed to Lazzell.

Keenan made and tendered to said Lazzell a deed in which his wife had not joined, and he declined to accept it. After some correspondence between them, by which Lazzell vainly endeavored to get a joint deed from L. H. Keenan and his wife, this suit was brought.

The deed, under which Mrs. Keenan claims, reads as follows:

"This deed, made this third day of December, 1903, between L. H. Keenan, party of the first part, and Elizabeth Keenan, party of the second part.

"Witnesseth, That, the party of the first part, for and in consideration of the sum of one dollar in hand paid, the receipt of which is hereby acknowledged and the further considerations mentioned in a certain contract dated December first, 1903, and which contract or agreement with the conditions and purposes therein set forth are here referred to as part hereof as fully and as completely as though the said contract were copied verbatim et literatum in this deed and which contract is to be the basis of construing the said deed and also for the purpose of describing the property to be hereby affected by this conveyance.

"The party of the first part, doth hereby grant and convey to the party of the second part, with covenants of general warranty all the rights, privileges, powers, ownership and control of the property therein mentioned and described and for the purposes therein mentioned and set *for,* which said contract has been duly signed and acknowledged and is to take precedence of this deed.

"To have and to hold the said property as herein set forth unto the party of the second part, her heirs and *assignes* and alienees forever, as herein mentioned and described.

"Witness the following signatures and seal.

L. H. Keenan, (SEAL)."

It will be noticed that this deed refers to a certain contract, made two days before, for both the consideration for the deed and the description of the property intended to be granted. That contract was not produced and was never recorded, although the deed recites that it was acknowledged and was "to take precedence over this deed." Keenan and his wife both testify that the contract was lost and could not be found. The only evidence regarding its contents is the testimony of Mrs. Keenan, who swears it contained these words: "Being indebted to my wife for large sums of money, I make this deed to secure her and protect her against loss." She does not say how much money she advanced to him, nor the time when she advanced it; nor does her husband prove the time or the amount. The nearest approach to it is found in the following answer to a question in his deposition: "When we entered into this contract I gave her credit as a part of the purchase money, I think about—my recollection is—about $1000. or $1500., that is the way I remember it but it has been so long I am not certain of it." In another part of his deposition he says: "Well I don't know that it was a loan, I had used that much of her money."

Prior to the date of the contract sued on, and while negotiations were pending for the purchase of the coal, one of Lazzell's attorneys wrote to Mrs. Keenan in Pittsburg, to ascertain what interest she claimed in the coal. She turned the letter over to McIlvain & Murphy, her attorneys in Pittsburg, and they replied to it under date of July 3, 1909, saying that Mrs. Keenan claimed an interest in the 83.637 acres of coal, as tenant in common with her husband, by virtue of the contract between him and herself, on account of money advanced to him.

L. H. Keenan contends plaintiff, Lazzell, knew, at the time he contracted for the coal, that Mrs. Keenan claimed an interest in the coal, and bought it subject to her claim, and was entitled to a deed from said Keenan for his interest only; and

that is the reason, he says, he sold the coal at the low price of $200 an acre, that it was worth, at the time he sold it, a great deal more than that. This claim is denied by Lazzell, who swears he bought the entire property and was to have a deed in fee from Keenan and his wife jointly. Lazzell's testimony is supported by letters written by Keenan to him and to his attorney. In a letter written to Lazzell on September 1, 1909, he says:

"I have heard from Mrs. Keenan and I am advised they, (meaning his wife and son), will be home in a few days and will sign the deed provided I do certain things that seems to be reasonable. I will have to have some money to arrange this but it is all to my satisfaction and will not interfere with our arrangements and in fact is in accordance with one of my recent letters to you. I will need from $500 to a $1000.00 to make this effective but it is all in line with our first contract.

"Please let me know at once if this will suit you as I am writing her today that I will carry out our agreement with her in this respect. I think this the best thing to do and we will get the whole matter untangled and you know it will all be right. There is no loss nor sacrifice on your part and I hope you may advise me at once if it is satisfactory to you. I may have to go to Pittsburg immediately."

This letter, together with others from L. H. Keenan put in evidence, proves that he was endeavoring to carry out the agreement, according to Lazzell's understanding of it, by having his wife join in the execution of the deed, thereby releasing her inchoate dower and any other interest she might have. Moreover, it is highly improbable Lazzell would have agreed to pay Keenan $200 an acre for his interest alone, knowing his wife claimed, under a recorded paper from her husband, an undefined interest, in addition to her inchoate dower. There is some conflict in the testimony concerning the value of the coal, at the time of the sale to Lazzell, but we think the prepondering testimony proves the price agreed to be paid was fair and reasonable. The prevailing price, in that neighborhood at that time, was $200 per acre; and this particular tract was then valued by the assessor for taxation at $155 per acre.

Mrs. Keenan was not a party to the contract of sale to Lazzell and she could not be compelled to join in the execution of a deed for the purpose of releasing her dower. But claiming, as she did, an interest in, or lien upon the coal, not defined by any recorded paper, plaintiff had a right to make her a party and have her interest ascertained by decree of the court; and, if it amounted to no more than a lien to secure money due her, he had a right to have the purchase money applied to its discharge, because Keenan's contract bound him to make a deed with covenants of general warranty and against all encumbrances. The demurrer to the bill was properly overruled. It presented a proper case for specific enforcement of the contract.

The court did not err in decreeing Mrs. Keenan's interest, under the deed from her husband, was only a mortgage, which plaintiff was entitled to discharge with the purchase money. In view of her own testimony the court could not have found her to be either the sole owner or a joint owner with her husband.

Mrs. Keenan's exception to the commissioner's report for failing to report a lien in her favor, for the money she says she had advanced to her husband, was properly overruled. She did not appear before the commissioner and prove the amount of her alleged lien, although he gave notice, as required by law and by the decree, of the time and place of making up his report. Her deposition in the cause, taken before the decree of reference, in relation to the money she claims she advanced to her husband, is too indefinite as to the time and uncertain as to the amount to enable the commissioner to report anything in her favor. Moreover, her husband, being asked whether or not he had paid her the $1,000 or $1,500, testified: "Well I have loaned her some money, but it had no relation to the contract. I have loaned her about $2000. on some property in Texarkana which is secured by a mortgage as I understand it." Both she and her husband may have regarded that obligation as fully discharged, and this may be the reason for her failure to appear before the commissioner. But, in no event, is she prejudiced, for she is estopped from asserting her lien upon any part of the purchase money, by her subsequent joinder with her hus-

band in two trust deeds securing debts largely in excess of the purchase price of the coal, one to I. G. Lazzell, trustee, in 1904, to secure a debt of $3,500, and another in 1912 to T. S. Lackey, trustee, to secure a debt of $16,000. She thereby released, in favor of the creditors secured, not only her contingent dower, but also "all right, title and interest of every nature" which she then had. Sec. 6. Ch. 73, Code 1913. Under his contract of purchase Lazzell is entitled to a deed with general warranty of title and against encumbrances, and he is, unquestionably, entitled to have the purchase money applied to the discharge of the liens created by Keenan and his wife, and to be subrogated, if need be, to the rights of the creditors thereby secured. After applying all the remainder of the purchase money, it leaves unpaid a large portion of the lien in favor of Citizens Title & Trust Company, which we have already intimated is inferior to plaintiffs' right. So that, the practical effect is the extinguishment of Mrs. Keenan's inchoate dower in either the coal or the proceeds from the sale of it. Although the purchaser had a right, under the contract, to demand a deed releasing the wife's contingent dower, *Thorn* v. *Sprouse*, 39 W. Va. 706, and authorities cited on pp. 715 and 716, and *Campbell* v. *Beard*, 57 W. Va. 501, and cases cited at p. 511, he, nevertheless, had the right to elect to rescind the contract, on the refusal of the wife to release dower, or to demand specific performance by the vendor, taking such title as he was able to make. It is not necessary to determine whether, in such case, the purchaser has a right to retain a portion of the purchase money to indemnify him against the wife's contingent dower, because, in this case, the purchase money is all consumed in the payment of liens in respect to which the wife had already released her dower. It was, therefore, not error for the court to decree a discharge of Mrs. Keenan's inchoate dower, upon the payment of the purchase money and its application to the liens in the manner indicated.

Keenan claims that a contract for the sale of the coal to Lazzell, made in June, 1909, was still in force. It does not appear in the record, nor is it important to know its terms. For, no matter what its provisions were, the contract sued on,

made July 10th, following, annuls it; it expressly cancels all previous agreements between the parties.

We find no error prejudicial to appellant in either of the decrees appealed from, and they will be affirmed.

*Affirmed.*